812 F.2d 1489
 Lawrence PAOLI, Jr., Plaintiff-Appellant,
v.
Robert LALLY, Secretary, Department of Public Safety and
Correctional Services; Robert McColley, Acting
Commissioner; McLindsey Hawkins, Acting Warden, Maryland
Penitentiary; Sigmond L. Fine, Assistant Warden of
Treatment, Maryland Penitentiary; Lloyd B. Calkins, Chief
Psychologist, Maryland Penitentiary; Arnold J. Hopkins,
Commissioner, Division of Correction; Edwin R. Goodlander,
individually; William J. Kunkel, Chairman, Maryland Parole
Commission; James Mills, Major, Acting Assistant Warden of
Custody-Maryland Penitentiary, Defendant-Appellees.
 No. 86-7188.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 12, 1986.
Decided March 9, 1987.
 
 John Henry West, III (Pamela J. White, Baltimore, Md., on brief), for plaintiff-appellant.
 Stephanie Lane-Weber, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen. of Md.; Deborah Koss Chasanow, Baltimore, Md., on brief), for defendants-appellees.
 Before SPROUSE, CHAPMAN and WILKINS, Circuit Judges.
 SPROUSE, Circuit Judge:
 
 
 1
 Lawrence Paoli, Jr., a Maryland inmate, appeals from the district court's grant of summary judgment against him and in favor of Edwin Goodlander, William Kunkel, Robert Lally, and Arnold J. Hopkins.[1] Paoli brought a Sec. 1983 action, 42 U.S.C. Sec. 1983, alleging his due process, equal protection, and eighth amendment rights were violated when Commissioner Goodlander summarily reversed his transfer from medium to minimum security facilities and again disapproved his transfer a year later. Paoli sought compensatory and punitive damages, declaratory relief, and an injunction requiring his placement in a minimum security facility. The suit has continued against former Commissioner Goodlander in his individual capacity and his successors in their official capacities. In a separate Sec. 1983 action against Chairman Kunkel of the Maryland Parole Commission, Paoli alleged his due process, equal protection, and eighth amendment rights were violated when the Commission allegedly failed to schedule an appropriate parole rehearing. In that action, Paoli asked for compensatory damages, declaratory relief, and an injunction requiring a parole hearing. The two actions were consolidated in 1984[2] and upon motion the district court granted summary judgments to all of the defendants, 636 F.Supp. 1252 (1986). We affirm.
 
 
 2
 In April 1966 Paoli was sentenced in the Criminal Court for Baltimore City, Maryland, to eighteen concurrent life sentences for ten counts of rape and eight counts of assault with intent to rape. Since then, he has been incarcerated within the Maryland prison system. In 1974 Paoli filed a lawsuit to obtain experimental drug treatment and since 1975 Paoli has received medical treatment in the form of psychotherapy and weekly injections of Depo-Provera, a drug that lowers testosterone levels and thereby decreases sexual urges. The treatment apparently has had a beneficial effect on Paoli; it is conceded that his appearance and behavior have improved dramatically.
 
 
 3
 Paoli was incarcerated in a maximum security facility when he began treatment, but was transferred to a medium security facility in 1978. Since that time his prison file has contained a "flag" indicating that the Commissioner is to be notified before Paoli is transferred to a facility categorized as less than medium security. On August 22, 1979, Paoli was transferred to a minimum security facility following the recommendation of a classification team and the concurrence of the warden of the facility where he was then incarcerated. Commissioner Goodlander, learning of the transfer the next day, ordered Paoli returned immediately to the medium security facility. Paoli received no prior notice of this action, nor was a statement of reasons provided or a hearing held. Commissioner Goodlander indicated that Paoli's transfer was disapproved pending a final review of the classification recommendation. In July 1980 Commissioner Goodlander issued his "final decision" that Paoli could not be transferred to a minimum security facility. That same month, another classification team recommended that Paoli be transferred to a minimum security facility, but Commissioner Goodlander again disapproved the transfer. Paoli then filed his Sec. 1983 action against Goodlander on November 7, 1980.
 
 
 4
 At a parole hearing that same month, November 1980, the Parole Commission noted that Paoli had not been moved to minimum security, denied him parole, and did not set a date for his next parole hearing. In January 1983, the Parole Commission again refused to set a date for a parole hearing. Paoli filed his Sec. 1983 suit against Chairman Kunkel on September 20, 1983. After the suit was filed, however, the Parole Commission held a hearing (in February 1984), denied parole, and set a date of 1992 for the next parole hearing.
 
 
 5
 The principal issue on appeal is whether summary judgment was properly granted to all the defendants in Paoli's action, which alleges violation of his due process, equal protection, and eighth amendment rights. Paoli contends these rights were implicated and violated by his removal from minimum security facilities without notice, a hearing, or a statement of reasons; by the later denial of his transfer to a minimum security facility; and by the Parole Commission's refusal in November 1980 to schedule a rehearing.[3] Summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., --- U.S. ----, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(c). Paoli contends genuine issues of material fact exist over the effect of his physical transfer to a minimum security facility and Commissioner Goodlander's reasons for disapproving his transfer. The parties have entered into substantial stipulations of material facts, however, including that Paoli was transferred to a minimum security facility as recommended by a classification team, then returned to medium security the next day pending a final review by the Commissioner. The parties also stipulated that Goodlander ultimately disapproved Paoli's transfer primarily because of the risk posed to society--the effects of Depo-Provera are temporary and there is no guarantee that Paoli would continue with the treatment if he were to escape or be released. The effect of these and other stipulations is to eliminate any "genuine issue as to any material fact," id., and to leave only the issue of whether the facts amount to violations of constitutional rights. The district court, therefore, properly determined that the only issues presented in this case are legal and not factual.
 
 
 6
 A transfer of a prisoner from one institution to another, of course, does not implicate a liberty interest in the absence of a state statute or regulation that creates such an interest. Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); Montanye v. Haymes, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). In Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), the Supreme Court, in finding that a liberty interest existed in obtaining a favorable parole determination, emphasized the mandatory language of the state statute requiring that eligible prisoners be released on parole unless one of several listed factors was found to exist. It also emphasized that whether a "state statute provides a protectible entitlement must be decided on a case-by-case basis." Id. at 12, 99 S.Ct. at 2106. Following Greenholtz, most lower courts have relied on the mandatory or discretionary nature of statutory language in determining whether it creates a liberty interest. See, e.g., Baumann v. Arizona Department of Corrections, 754 F.2d 841, 843-44 (9th Cir.1985); Pugliese v. Nelson, 617 F.2d 916, 922-25 (2d Cir.1980); Wagner v. Gilligan, 609 F.2d 866, 867 (6th Cir.1979); Boothe v. Hammock, 605 F.2d 661, 663-65 (2d Cir.1979); Shirley v. Chestnut, 603 F.2d 805, 807 (10th Cir.1979); see also Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). But cf. Winsett v. McGinnes, 617 F.2d 996 (3d Cir.1980), cert. denied, 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981) (Delaware work release program created liberty interest because of specific criteria listed despite lack of mandatory language in statutes and regulations). The initial question, therefore, is whether the relevant Maryland statutes and regulations in effect at the time of the alleged violations create a protectable liberty interest.
 
 
 7
 Section 674 of Article 27 of the Maryland Code provides: "The Commissioner is in sole and active charge of the Division of Correction and of its several institutions and agencies, subject only to his responsibility to the Secretary of Public Safety and Correctional Services and to the Governor." Md.Ann.Code art. 27, Sec. 674. Under section 676, "[t]he Commissioner may adopt and promulgate reasonable rules and regulations," which "may be altered, amended or abrogated" by him. Md.Ann.Code art. 27, Sec. 676. Section 690(b) provides that prisoners "may ... be held, confined in, assigned to or transferred to ... institutions and facilities as the Division may from time to time order." Md.Ann.Code art. 27, Sec. 690(b). The purpose of this statute is "to authorize the Department (sic) [of Correction] to hold, assign and transfer prisoners among the State prison institutions as it deems necessary." Mullins v. State, 12 Md.App. 222, 224, 278 A.2d 85 (1971). Section 690A provides that "no prisoner confined to a maximum or medium institution or facility ... may be transferred to a minimum security institution or facility ... without the participation, evaluation, review, and final approval, in each case, of the classification office of the Division of Correction." Md.Ann.Code art. 27, Sec. 690A(a). Section 690A does not specifically address the transfer of prisoners from minimum security to a higher security facility, but does not prohibit the Commissioner from exercising his discretionary role under Secs. 674 and 690(b) in prisoner transfers.
 
 
 8
 The relevant regulations of the Maryland Division of Correction in effect at the time of the alleged violations are Division of Correction Regulations (DCR) 100-1, 100-3, 100-14, and 100-16. DCR 100-1 establishes a classification team in each institution, which makes recommendations on transfer, subject to approval by the managing officer (Warden). Under this regulation, the Commissioner must also approve certain recommendations, but none of those are involved here. The regulation is silent as to the Commissioner's participation in other recommendations. DCR 100-3 requires that each institution establish "guidelines" for assignment of inmates to minimum security classification. DCR 100-14 governs transfers to minimum security facilities and DCR 100-16 provides procedures for transfers to greater security facilities.
 
 
 9
 The district court held that, under the statutes, the Commissioner has authority to control the transfers of inmates and nothing in the regulations limited that discretionary authority. The court determined that none of the regulations have the mandatory language crucial under Greenholtz and further held that DCR 100-1 is only for guidance and does not substantively limit the Commissioner's authority to review classification recommendations. See Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983). We agree that Commissioner Goodlander had the authority to review and ultimately disapprove the classification team's recommendation that Paoli be transferred to a minimum security facility. Moreover, DCR 100-14 sets forth guideline criteria that the classification team must consider in recommending transfer to minimum security facilities, but does not preclude the consideration of other factors and does not necessarily require the transfer of inmates who meet the criteria, unlike the statutory language interpreted in Greenholtz. Consequently, the district court held, and we agree, that neither the Maryland statutes nor the regulations create liberty interests protected by the due process clause of the fourteenth amendment. Commissioner Goodlander's removal of Paoli from minimum security and subsequent disapprovals of recommendations that he be transferred to a minimum security facility, therefore, did not violate due process.
 
 
 10
 We also agree with the district court that the Commissioner's singular treatment of Paoli did not violate his fourteenth amendment equal protection rights because the circumstances of his incarceration are entirely unique. No other Maryland prisoner is serving sentences even approaching his eighteen concurrent life sentences. Moreover, the circumstances surrounding Paoli's hormonal imbalance and special drug therapy, combined with the corresponding risk posed if he should discontinue the program upon release or escape, present exceptional considerations in managing his incarceration. Likewise, we see no merit to Paoli's contention that his eighth amendment rights have been violated. He has received medical and psychological treatment at all relevant times and the refusal to transfer him to minimum security does not of itself amount to cruel and unusual punishment.
 
 
 11
 Since we conclude that neither Paoli's due process, equal protection, nor eighth amendment rights were violated by the Commissioner of Corrections, we do not reach the issue concerning Goodlander's qualified immunity defense.
 
 
 12
 Assuming arguendo that Paoli's claims were not rendered moot by the February 1984 parole hearing and the scheduled 1992 rehearing, summary judgment was still properly granted in favor of Chairman Kunkel of the Parole Commission. Paoli has no constitutionally protected entitlement to have a parole rehearing scheduled. The Maryland Code does not address the issue, Md.Ann.Code, art. 41, Sec. 4-501 et seq., and the regulations place the holding and scheduling of rehearings in the discretion of the Parole Commission. COMAR Sec. 12.08.01.23(B). The Commission, therefore, did not violate Paoli's due process, equal protection, or eighth amendment rights when it failed to schedule a date for rehearing in November 1980 after denying him parole.
 
 
 13
 Because we find that Paoli had no constitutionally protected right to a scheduled parole rehearing, we do not reach the issue concerning Kunkel's qualified immunity defense.
 
 
 14
 In view of the above, the judgment of the district court granting summary judgment to the defendants was proper and is affirmed.
 
 
 15
 AFFIRMED.
 
 
 
 [1]
 Edwin Goodlander was Commissioner of the Maryland Division of Correction when this action was initiated. Arnold J. Hopkins is the current Commissioner. William Kunkel was Chairman of the Maryland Parole Commission when the alleged violations occurred. Robert Lally was Secretary of Public Safety and Correctional Services in 1974. He was the first named defendant in a civil lawsuit Paoli brought in 1974 to obtain special drug treatment. The district court reopened and consolidated that case with the two actions that contain the issues presented in this appeal
 
 
 [2]
 As noted, the district court also reopened a 1974 civil action Paoli brought against various Division of Correction officials and consolidated it with the two pending Sec. 1983 actions
 
 
 [3]
 Paoli also contends that the refusal to transfer him to minimum security violated his constitutional rights because, under the Maryland correctional statutes and regulations, the "progress of the inmate during his confinement" is a factor that must be considered at a parole hearing. Md.Ann.Code, art. 41, Sec. 4-506(3); COMAR Sec. 12.08.01.18A. According to this argument, if Paoli is not permitted to progress through the Division of Correction toward minimum security and pre-release facilities, he will never be deemed eligible for parole. This result, however, cannot create a protected liberty interest in being transferred to a minimum security facility that is not otherwise created by the statutes and regulations