30 F.3d 128
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
William BRYANT, Plaintiff-Appellant,
v.
Richard A. LANHAM, Commissioner, Division of Correction;
William Smith, Warden, Maryland House of Correction; Joseph
P. Sacchet, Warden, Maryland Correctional Training Center;
James Murphy, Chief of Security, Maryland House of
Correction, Defendants-Appellees.
William BRYANT, Plaintiff-Appellant,
v.
William SMITH, Warden; James Murphy, Chief of Security,
Defendants-Appellees.
 Nos. 93-6073, 93-6143.
 United States Court of Appeals, Fourth Circuit.
 Submitted: March 7, 1994.
Decided: Aug. 1, 1994.
 
 Appeals from the United States District Court for the District of Maryland, at Baltimore. Alexander Harvey II, Senior District Judge. (CA-92-2513-H, CA-92-2159)
 William Bryant, Appellant Pro Se.
 John Joseph Curran, Jr., Attorney General, Audrey J. S. Carrion, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, MD, for Appellees.
 D.Md.
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 Before HAMILTON and MICHAEL, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 William Bryant, a Maryland prison inmate, filed two 42 U.S.C. Sec. 1983 (1988) actions in district court: He challenged his placement on administrative segregation and his subsequent transfer from the Maryland House of Corrections (MHC) to the Maryland Correctional Training Center (MCTC)[1] The district court granted summary judgment for Defendants in both cases. We affirm in part, vacate in part, and remand for further proceedings.
 
 I.
 
 2
 In July 1992, Bryant mailed two letters to a female volunteer at the MHC legal clinic. These letters were rife with sexual innuendo and threats. Prison officials, on review of the letters, immediately placed Bryant on administrative segregation on July 21, 1992. Bryant was not told the reason for this transfer. The next day, Bryant asked the case management specialist for the segregation unit the reason for the transfer. In response, he received a memo: "Since you are so recently placed on Adm. Seg. I am unable to locate any info." (Emphasis in original). This individual never got back to Bryant with any information, and Bryant made no further inquiry. Instead, on August 3, 1992, he filed the complaint in No. 93-6143 against Smith, the Warden of MHC, and Murphy, the chief of security for the institution. Bryant alleged that his placement and confinement in administrative segregation violated his Fourteenth Amendment right to due process, as he was not given notice within forty-eight hours or a hearing within ninety-six hours, as provided in Maryland prison regulations. He sought compensatory and punitive damages.
 
 
 3
 On August 11, 1992, twenty-one days after the status change, a classification hearing was held. Bryant refused to attend the hearing, alleging that his attendance would moot the litigation. The team recommended his transfer for security reasons, and on August 14, Bryant was transferred to the general population of MCTC. Bryant then filed the complaint in No. 93-6073, alleging that this transfer was in retaliation for his prior lawsuit. After hearing from both parties in each action, the district court granted Defendants' Motions for Summary Judgment.
 
 II.
 
 4
 The standard of appellate review for the grant or denial of summary judgment is de novo; therefore, we review the record using the same standard as the district court. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.1994), petition for cert. filed, 62 U.S.L.W. 3827 (U.S. May 6, 1994) (No. 93-1893). Summary judgment is appropriate only where there is no genuine issue of fact and the movant is entitled to judgment as a matter of law. Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir.1990) (en banc), cert. denied, 498 U.S. 1109 (1991). The facts, and inferences to be drawn from the facts, must be viewed in the light most favorable to the nonmoving party. Moore v. Winebrenner, 927 F.2d 1312, 1313 (4th Cir.), cert. denied, 60 U.S.L.W. 3259 (U.S.1991). Summary judgment is appropriate where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).
 
 III.
 
 5
 The Supreme Court, in Hewitt v. Helms, 459 U.S. 460 (1983), addressed the issue of what limits the Fourteenth Amendment Due Process Clause places on the right of prison authorities to transfer inmates from the general population to administrative segregation. The Court held that, while transfer to the more restrictive confinement does not in itself implicate liberty interests protected by due process, id. at 468, state statutes and regulations may create a liberty interest in remaining in the general population. Id. at 472. A prison regulation creates a protected liberty interest where it imposes "substantive limitations on official discretion," Olim v. Wakinekona, 461 U.S. 238, 249 (1983), by using "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed, ... and that administrative segregation will not occur absent specified substantive predicates." Hewitt, 459 U.S. at 471-72. Maryland Division of Correction Regulation (DCR) 110-19, which sets forth the policy and procedure governing administrative segregation, creates a liberty interest through the use of mandatory language and by specifying procedures to be followed when assigning inmates to administrative segregation.[2] While the regulation requires, inter alia, notice within forty-eight hours and an initial review by a classification team within ninety-six hours, federal due process does not require adherence to these specific guarantees. Riccio v. County of Fairfax, 907 F.2d 1459, 1469 (4th Cir.1990). Due process merely requires an informal, nonadversary review of the information supporting the confinement, including any response from the inmate, within a reasonable time after such confinement. Hewitt, 459 U.S. at 472.
 
 
 6
 There is no specific period that constitutes a "reasonable" time under Hewitt. In each case, courts look to totality of the circumstances to determine the reasons for the time taken, the interests of the prison administration which were at stake, and the inmate's interest in a prompt resolution of the issue. See, e.g., Hewitt v. Helms, 459 U.S. 460 (1983) (five-day delay following riot to complete investigation of Helms' role in the riot was reasonable); Layton v. Beyer, 953 F.2d 839 (3d Cir.1992) (remand to determine whether twenty-day delay reasonable pending investigation of twenty inmates' involvement in drug trafficking); Santana v. Keane, 949 F.2d 584 (2d Cir.1991) (five-day delay in hearing survives Fed.R.Civ.P. 12(b)(6) motion); Russell v. Coughlin, 910 F.2d 75 (2d Cir.1990) (ten days with no notice or review because of inadvertence is not reasonable); Gittens v. Le Fevre, 891 F.2d 38 (2d Cir.1989) (seven-day confinement pending disciplinary hearing with no opportunity to be heard violates due process); Matiyn v. Henderson, 841 F.2d 31 (2d Cir.) (four-day confinement on special housing unit before transfer with no notice, opportunity to be heard violates due process), cert. denied, 487 U.S. 1220 (1988); Perez v. Neubert, 611 F.Supp. 830 (D.N.J.1985) (three-week delay in hearings for thirty-three Marielito Cubans not unreasonable in view of administrative burden, continuing investigations).
 
 
 7
 In evaluating the totality of the circumstances in the Hewitt context, we look at the reason for the delay in light of the interests of the prison administration and the interests of the prisoner. Layton, 953 F.2d at 850. Here, the record shows no justification for the fact that Bryant did not receive the process mandated by Hewitt for at least three weeks. Defendants did not assert any interest causing the delay and none is apparent on this record.
 
 
 8
 The district court concluded that (1) the initial assessment of the offending letters satisfied the Hewitt review requirement, (2) Bryant could have, but did not, submit his statement of events, and (3) Bryant had failed to allege or show a loss or detriment resulting from the alleged deprivations. We disagree. Initially, we note that the fact that Bryant ultimately deserved to be placed in administrative segregation "is irrelevant to the question of whether he received due process on his way there." Layton, 953 F.2d at 847. Moreover, on this record, Bryant's failure to submit his version of events is not surprising given that he had no notice of the charges he faced. Finally, it is well established that nominal damages may be recovered for a denial of procedural due process, without a showing of injury. See Carey v. Piphus, 435 U.S. 247, 266 (1978); see also Ganey v. Edwards, 759 F.2d 337, 339 (4th Cir.1985).
 
 
 9
 Accordingly, given the evidence before us, Bryant's administrative segregation claim must be remanded. On remand, Defendants are not precluded from renewing their motion with appropriate evidence showing justification for the delay. Evidence showing that the delay is due to administrative convenience is insufficient. Layton, 953 F.2d at 851.
 
 IV.
 
 10
 In No. 93-6073, Bryant challenges his transfer from MHC to MCTC. He alleges that he was transferred in retaliation for his suit against Smith and Murphy regarding his placement in administrative segregation. Bryant asserts that he was sent to MCTC because the law library there is inferior to that at MHC, and he would be hindered in his prosecution of the ongoing action.
 
 
 11
 Due process is not implicated in an inmate's transfer from one prison to another absent a state statute or regulation creating such an interest. Meachum v. Fano, 427 U.S. 215, 225 (1976); Montanye v. Haymes, 427 U.S. 236, 242 (1976). We have held that Maryland statutes and regulations create no liberty interest in residence in a particular institution. Paoli v. Lally, 812 F.2d 1489 (4th Cir.), cert. denied, 484 U.S. 864 (1987). We agree with the district court that Bryant makes only a conclusory charge that the transfer was motivated by a desire to retaliate against him for his federal lawsuit. Such a conclusory allegation, with no factual support, does not survive summary judgment. Goldsmith v. Mayor and City Council of Baltimore, 987 F.2d 1064, 1071 (4th Cir.1993). Therefore, we affirm the district court's grant of summary judgment in No. 93-6073.
 
 
 12
 Accordingly, we affirm in part the judgment of the district court, vacate in part, and remand for further proceedings consistent with this opinion. Bryant's motion to delay hearing of the appeal is denied.[3] We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 
 [1]
 We consolidated these cases on appeal
 
 
 [2]
 DCR 110-19 provides, in pertinent part:
 V. Policy:
 It is the policy of the Division of Corrections to utilize administrative segregation when an inmate requires close supervision and segregation from the general inmate population, for either short or extended periods of time. Administrative segregation may be used to ensure the safety and security of the institution, the staff or the general inmate population.
 VI. Procedure:
 A. Procedures for admission, retention, and release.
 * * *
 
 
 [2]
 An inmate may be placed on administrative segregation only in response to a potential threat to the safety, security, and good order of the institution, and there must be reason to believe that the placement of the inmate ... will reduce that threat. The following are situations which may warrant the placement of an inmate on administrative segregation:
 a. To prevent the escape of the inmate, when there is reason to believe that the inmate is an escape risk;
 b. When an inmate is under sentence of death;
 c. During the pendency of a criminal investigation, when for example, there is reason to believe that the inmate might otherwise intimidate potential witnesses;
 d. During the pendency of adjustment proceedings, when the inmate has been charged with a violation of inmate rules and there is reason to believe the inmate is a potential threat to the security of the institution.
 
 
 [3]
 Notification to the inmate
 a. The inmate shall be provided with a copy of the "Notice of Assignment to Administrative Segregation" within 48 hours after his or her placement on administrative segregation. The inmate shall sign the acknowledgment ... and the original shall then be forwarded to the classification team for further action.
 * * *
 
 
 [4]
 Initial review
 a. The inmate's placement on administrative segregation shall be reviewed by the classification team within 96 hours. The inmate will be given the opportunity to respond to the reasons stated for his/her placement on administrative segregation.
 
 
 [3]
 Bryant seeks to have us consider exhibits submitted to the district court in a motion for reconsideration. The district court has not ruled on that motion, so that motion and its accompanying exhibits are not before us for review