Clarence T. BERRIER, Plaintiff–Appellant,

v.

Sherrill ALLEN; Garland Shook; Herb Myers, Defendants–Appellees.

No. 90–6425.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 2, 1991.

Decided Dec. 13, 1991.

Leslie Renee Nydick, North Carolina Prisoner Legal Services, Inc., Raleigh, N.C., for plaintiff-appellant.

LaVee Hamer Jackson, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, N.C., argued (Lacy H. Thornburg, Atty. Gen., Sylvia Thibaut, Asst. Atty. Gen., on brief), for defendants-appellees.

Before RUSSELL, HALL and PHILLIPS, Circuit Judges.

## OPINION

PHILLIPS, Circuit Judge:

This appeal requires us to determine whether certain North Carolina prison reg-ulations concerned with the administrative segregation of state prison inmates confer upon those inmates a liberty interest for which the Fourteenth Amendment provides procedural due process protections. Clarence Berrier, an inmate confined in admin-istrative segregation without prior notice or any opportunity to be heard, claimed in this action brought under 42 U.S.C. § 1983, that his Fourteenth Amendment rights to due process were violated by his confine-ment. The district court held that the reg-ulations in issue did not create a protected liberty interest and dismissed Berrier's claim. We agree, though on somewhat dif-ferent grounds, and affirm.

## I

On June 14, 1988, while incarcerated at the Craggy Correctional Center in Ashe-ville, North Carolina, serving consecutive sentences totalling 90 to 100 years, Berrier was transferred from the general prison population to administrative segregation. A correctional lieutenant at Craggy had received a confidential memorandum about an incident involving a weapon in which Berrier was implicated. Based on this memorandum and interviews with other in-mates regarding the incident, the lieuten-ant and other prison officials determined that Berrier posed a threat to both staff and other inmates, and they decided to confine Berrier in administrative segrega-tion. He was later transferred to McDo-well Correctional Center, where he re-mained in administrative segregation until July 17, 1988.

After 22 days of segregated confine-ment, Berrier filed a grievance and, five days later, was told that he was being held in administrative segregation pending a dis-ciplinary charge. This was the first notice Berrier received of the reason for his con-finement in administrative segregation. Two days later Berrier was told that he was being segregated pending a demotion in his custody classification. Berrier was released from administrative segregation on July 17, 1988, and was transferred to

Odom Correctional Center for close custody confinement.

Berrier filed a *pro se* 42 U.S.C. § 1983 complaint in the United States District Court for the Eastern District of North Carolina. He alleged that various state prison officials violated his due process rights by confining him in administrative segregation without providing him with notice of the reason for his confinement and an opportunity to respond, to both of which, Berrier contended, he was entitled by virtue of his constitutionally protected liberty interest in remaining in the general prison population.

A magistrate judge to whom the case was referred held that the regulations conferred on Berrier a protected liberty interest of which he had been deprived without due process, but the district court rejected this view and dismissed Berrier's action. This appeal followed.

## II

■ The safeguards of the Due Process Clause are triggered only when a Fourteenth Amendment-protected liberty interest is at stake. *See Meachum v. Fano*, 427 U.S. 215, 223–24, 96 S.Ct. 2532, 2537–38, 49 L.Ed.2d 451 (1976). "Liberty interests protected by the Fourteenth Amendment may arise from two sources— the Due Process Clause itself and the laws of the States." *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 868–69, 74 L.Ed.2d 675 (1983). The Due Process Clause itself confers only a very limited range of protected liberty on inmates lawfully convicted and confined in prison. Its substantive protection extends only to punishment and conditions of confinement not contemplated by the original prison sentence. *See, e.g., Vitek v. Jones*, 445 U.S. 480, 493, 100 S.Ct. 1254, 1263–64, 63 L.Ed.2d 552 (1980) (liberty interest of prison inmate in not being involuntarily transferred to mental hospital arises out of Due Process Clause). The Due Process Clause does not independently create "an interest in being confined to a general population cell, rather than the more austere and restrictive administrative segregation quarters," *Hewitt*, 459 U.S. at

466–67, 103 S.Ct. at 869, because "administrative segregation is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration," *id.* at 468, 103 S.Ct. at 870. Berrier is left, then, with only state law as a potential source of a protected liberty interest that could have been implicated by his confinement in administrative segregation.

■ Berrier relies on 5 N.C.Admin.Code 2C.0302 as conferring on him a Fourteenth Amendment-protected liberty interest. That regulation provides, in relevant part, that

(c) In cases where an inmate is confined to administrative segregation for a period greater than 15 days, segregated inmates should be reviewed before an area or institutional classification committee. The inmate should receive written notice ... of the reasons that he is being considered for administrative segregation at least 24 hours before the review is held.

(d) ... At the review, the inmate will be informed of the reasons why he is being held in administrative segregation and will be given an opportunity to speak in his own behalf about any matter relevant to his classification status.

5 N.C.Admin.Code 2C.0302(c), (d). Berrier's reliance on 2C.0302, however, is misplaced. Regulation 2C.0302 merely directs in precatory terms a procedure that "should" be followed by prison officials in making decisions to confine inmates in administrative segregation for periods greater than 15 days: the critical language is that "segregated inmates should be reviewed," and that inmates "should receive written notice." The mere fact that North Carolina has created this procedural regime for imposing administrative segregation on its inmates does not in itself indicate the existence of an underlying Fourteenth Amendment-protected liberty interest. "The adoption of such procedural guidelines, without more, suggests that it is these restrictions alone, and not those federal courts might also impose under the Fourteenth Amendment, that the State chose to require." *Hewitt*, 459 U.S. at 471,

103 S.Ct. at 871. The something "more" required to create a liberty interest protected by the Fourteenth Amendment is the establishment by state law of substantive predicates to govern official decisionmaking and limit discretion, coupled with language that explicitly mandates the outcome to be reached upon a finding that the relevant criteria have been met. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 459–63, 109 S.Ct. 1904, 1907–10, 104 L.Ed.2d 506 (1989). Though Regulation 2C.0302 plainly contains neither substantive predicates nor explicitly mandatory language, its companion regulation, 5 N.C.Admin.Code 2C.0301, arguably does and therefore requires attention.

■ Regulation 2C.0301 defines administrative segregation as "the temporary removal of an inmate from a general inmate population to confinement in a secure area." The regulation further provides:

Administrative segregation is authorized pending initial processing, including identification and reception of records, and as follows:

(1) to protect staff and other inmates from the threat of harm by the inmate;

(2) to protect the inmate involved from self injury or threat of harm by others;

(3) to minimize the risk of escape by the inmate or others influenced by his actions;

(4) to preserve order where other methods of control have failed.

5 N.C.Admin.Code 2C.0301. These four situations clearly operate as substantive predicates for confining inmates in administrative segregation because they are the circumstances under which administrative segregation is authorized. *Cf. Hewitt*, 459 U.S. at 472, 103 S.Ct. at 871 ("the need for control" and "the threat of a serious disturbance" considered substantive predicates in Pennsylvania prison regulations for confining inmates in administrative segregation). However, Regulation 2C.0301 lacks the "requisite relevant mandatory language" required in conjunction with the substantive predicates to create a Fourteenth Amendment-protected liberty interest.

*Thompson*, 490 U.S. at 464, 109 S.Ct. at 1910–11.

It is "the repeated use of explicitly mandatory language *in connection with* requiring specific substantive predicates" that "demands a conclusion that the State has created a protected liberty interest." *Hewitt*, 459 U.S. at 472, 103 S.Ct. at 871 (emphasis added). An example of such explicitly mandatory language, as found by the *Hewitt* Court in the regulations there in issue, was the requirement that "[i]f no behavior violation has occurred, the inmate *must be released* as soon as the reason for the security concern has abated *but in all cases within ten days.*" *Id.* at 471 n. 6, 103 S.Ct. at 871 n. 6 (emphasis added). This language mandates release when a certain condition (no behavior violation) is met. Regulation 2C.0301, on the other hand, while containing substantive predicates, "stop[s] short of requiring that a particular result is to be reached upon a finding that the substantive predicates are met." *Thompson*, 490 U.S. at 464, 109 S.Ct. at 1910–11. Nothing in Regulation 2C.0301—or 2C.0302, for that matter—mandates what actions prison officials are required to take given certain specified conditions. Nothing in the regulations, for example, explicitly requires that prison officials not confine an inmate in administrative segregation unless one of the situations enumerated in Regulation 2C.0301 exists. Lacking "language of an unmistakably mandatory character" providing that "administrative segregation will not occur absent specified substantive predicates," *Hewitt*, 459 U.S. at 471–72, 103 S.Ct. at 871–72, Regulations 2C.0301 and 2C.0302 do not create in inmates a Fourteenth Amendment-protected liberty interest in not being so confined.

### III

■ The Due Process Clause therefore provided Berrier no procedural protection against the discretionary confinement in administrative segregation of which he complained. His action was properly dis-

missed by the district court, whose judgment is therefore affirmed.

AFFIRMED.