Gary **SLEZAK**, Plaintiff–Appellant,

and

James Plyler; Donald M. Cogdill, Plaintiffs,

v.

Parker **EVATT**, Commissioner, South Carolina Department of Corrections; Kirkland Correctional Institution, in their individual and collective official capacities; Laurie F. Bessinger, Warden, Defendants–Appellees.

James **PLYLER**, Plaintiff–Appellant,

and

Donald M. Cogdill; Gary Slezak, Plaintiffs,

v.

Parker **EVATT**, Commissioner, South Carolina Department of Corrections; Kirkland Correctional Institution, in their individual and collective official capacities; Laurie F. Bessinger, Warden, Defendants–Appellees.

Nos. 92–6864, 92–6964.

United States Court of Appeals, Fourth Circuit.

Argued July 14, 1993.

Decided April 14, 1994.

**ARGUED:** W. Gaston Fairey, Fairey, Parise & Mills, P.A., Columbia, SC, for appellants. E. Meredith Manning, Robinson, McFadden & Moore, P.C., Columbia, SC, for appellees. **ON BRIEF:** James M. Brailsford, III, Robinson, McFadden & Moore, P.C., Columbia, SC; Barbara M. Bowens, Asst. Gen. Counsel, South Carolina Department of Corrections, Columbia, SC, for appellees.

Before PHILLIPS and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.

Affirmed by published opinion. Judge PHILLIPS wrote the opinion, in which Judge MURNAGHAN and Senior Judge BUTZNER joined.

## OPINION

PHILLIPS, Circuit Judge:

Gary Slezak and James Plyler, inmates in the South Carolina prisons system, appeal the dismissal by summary judgment of their respective claims brought under 42 U.S.C. § 1983 against state prison officials in which they alleged deprivations of various constitutional rights in connection with their security classifications.[1] Because we conclude that South Carolina law creates no liberty interests protected by the Fourteenth Amendment in the respects claimed, we affirm.

## I

Slezak and Plyler, inmates of Kirkland Correctional Institution (KCI), which operates under the authority of the South Carolina Department of Corrections (SCDC), filed a *pro se* complaint under 42 U.S.C. § 1983 against SCDC Commissioner Parker Evatt, KCI, and KCI Warden Laurie Bessinger (collectively, "defendants"), seeking injunctive relief and damages for alleged violations of rights guaranteed by the Fifth, Eighth, and Fourteenth Amendments as well as violations of state tort law. Among their claims were allegations that defendants had subjected them to "punitive, high security" classification without notice or hearing, J.A. 19, and wrongly refused to classify them as "A or AA custody status"—*i.e.*, minimum custody. J.A. 123. In particular, they alleged that the defendants failed to take account of certain earned work credits which, if

considered, would have enhanced their custody status. J.A. 137. Slezak additionally alleged that "he was denied due process when his restricted A status was taken" without a hearing when he was housed at another correctional institution, J.A. 124, and that the warden of that institution wrongly considered a past escape attempt in making that classification decision. *Id.*

The district court, on recommendation of a magistrate judge, granted summary judgment to the defendants on all the claims. This appeal followed.

## II

On this appeal, we consider only one of the several claims originally made by the inmates: that the defendants' implementation of the state's inmate classification system denied them the protections of procedural (and substantive?) due process.[2] In doing so, we review *de novo* the district court's dismissal of that claim by summary judgment. *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1127–28 (4th Cir.1987).

## A

The basic principles are clear enough. To prevail on a § 1983 claim that actions by state officials respecting a state prison inmate's security and custody classification have violated the inmate's procedural due process rights, the claimant must prove that (1) he had a protected liberty interest in receiving a new or retaining a current classification, (2) which interest was adversely affected by the actions, (3) without the protections of due process guaranteed by the Fourteenth Amendment. *See Wolff v. McDon-*

1. A third inmate, Donald M. Cogdill, was a co-plaintiff but is not a party to this appeal.

2. Upon consideration of the inmates' informal briefs and the records in their consolidated *pro se* appeals, we appointed counsel to brief and orally argue the classification system issue only. Under our I.O.P. 46.3, when appointed counsel in a *pro se* appeal is directed to brief only particular issues, he is free, and is so informed, to address any additional issues that appear to be meritorious. Appointed counsel here chose to brief only the assigned issue. The inmates were provided copies of their appointed counsel's brief, and did

not seek leave to file supplemental briefs raising other issues. Under these circumstances, we treat the formal brief as definitive of the issues for review and, applying the normal rule of waiver, consider only those issues, unless an inspection of the record indicates that failure to consider other issues might result in grave injustice. *See McGee v. Estelle,* 722 F.2d 1206, 1213 (5th Cir.1984). We have found no such possibility here after an inspection of the record, including the issues originally sought to be raised by the inmates in their superseded informal briefs.

*nell,* 418 U.S. 539, 555–57, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974).

■ The logical first question in assessing such a claim is, therefore, whether the inmate has a protectible liberty interest in the classification he seeks either to retain (against a "demotion") or to receive (by a "promotion"). This, in turn raises the question of where such a liberty interest might be found. Here, again, the basics are plain. The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status " '[a]s long as the [challenged] conditions or degree of confinement ... is within the sentence imposed ... and is not otherwise violative of the Constitution.' " *Hewitt v. Helms,* 459 U.S. 460, 468, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983) (quoting *Montanye v. Haymes,* 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)). Within these limits, so far as the federal constitution is concerned, the security and custody classification of state prison inmates is a matter for state prison-official discretion whose exercise is not subject to federal procedural due process constraints.

■ But such a liberty interest to retain or attain a particular security or custody classification may be created by state law having a very specific quality. Its effect must be to "plac[e] substantive limitations on official discretion," *Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983), thereby giving rise, at the limits imposed upon discretion, to "legitimate claim[s] of entitlement," *Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989), to the classification sought and administratively denied.

■ The rub has come in determining whether particular state law has the required quality. Some fleshing out and clarification of the test has been provided in the line of Supreme Court decisions applying it to various state law patterns. Early on, *Hewitt* emphasized the need for "explicitly mandato-

ry language in connection with requiring specific substantive predicates." 459 U.S. at 472, 103 S.Ct. at 871. And *Olim* emphasized that if under state law "the decisionmaker is not 'required to base its decisions on objective and defined criteria,' but instead 'can deny the requested [classification] for any constitutionally permissible reason or for no reason at all,' " that law creates no protected liberty interest. 461 U.S. at 249, 103 S.Ct. at 1747 (quoting *Connecticut Bd. of Pardons v. Dumschat,* 452 U.S. 458, 467, 101 S.Ct. 2460, 2465, 69 L.Ed.2d 158 (1981) (Brennan, J., concurring)). And, again, per *Olim,* the mere fact that state law mandates specific procedures does not suffice, since "[t]he State may choose to require procedures for reasons other than protection against deprivation of substantive rights." *Id.* 461 U.S. at 250–51, 103 S.Ct. at 1748. For, as *Thompson* most recently has pointed out, that which must be found mandated by state law is not procedures alone, or even procedures plus substantive predicates (objective criteria) alone, but substantive *results* once prescribed procedures have revealed that substantive predicates have been established. 490 U.S. at 464, 109 S.Ct. at 1910 (state laws that "stop short of requiring that a particular result is to be reached upon a finding that the substantive predicates are met" do not create protected liberty interests).

■ From these Supreme Court decisions, we have derived and applied the following understandings. No matter how firmly and in what detail procedural protections are mandated by state law for making decisions respecting the conditions of inmate custody and confinement, those standing alone create no protected liberty interest— either in the procedures or in any substantive result sought. *See Stewart v. Bailey,* 7 F.3d 384, 392 (4th Cir.1993). By the same token, no matter how plainly and explicitly substantive predicates for making such decisions are provided by state law, those either alone or in conjunction with prescribed procedures do not, *without more,* create protected liberty interests.[3] *See Berrier v. Allen,*

---

3. Though they may of course create enforceable state-law rights. *See Stewart v. Bailey,* 7 F.3d at 392–93.

951 F.2d 622, 624–25 (4th Cir.1991) (North Carolina prison regulations); *O'Bar v. Pinion,* 953 F.2d 74, 84–85 (4th Cir.1991) (same); *Paoli v. Lally,* 812 F.2d 1489, 1492–93 (4th Cir.), *cert. denied,* 484 U.S. 864, 108 S.Ct. 184, 98 L.Ed.2d 137 (1987). (Maryland regulations).

■ What this all comes to is that constitutionally protected liberty interests are only created by state law regimes which in the end effectively say to inmates: "If facts A, B, and C are established in an appropriate fact-finding process, you are thereupon legally entitled to a more favorable security or custody classification than you presently have," or, "Unless facts A, B, and C are so established, you are legally entitled not to be placed in a less favorable classification than you now have."

■ Thus, even if a state law regime mandates both a detailed procedural process for making classification decisions, and substantive criteria to be used in making those decisions, no constitutionally protected liberty interest is thereby created if under the regime either the primary decisionmaker or any reviewing authority is authorized to override, as a matter of discretion, any classification suggested by application of the prescribed substantive criteria. *See Stewart,* 7 F.3d at 392; *Paoli,* 812 F.2d at 1493.

### B

Applying these principles here, we conclude that South Carolina law does not create a constitutionally protected liberty interest in the classifications sought by the claimants in this action. Three possible sources in state law need consideration.

■ The first possible source is in the state statutes which create and define the powers of the SCDC. In pertinent part, these provided at the time that SCDC was governed by a Board of Corrections, which was then authorized to employ a Commissioner and to promulgate rules and regulations necessary for the operation of SCDC. S.C.Code Ann. §§ 24–1–40, –90, –100, –130 (Law.Co-op.1989).[4] The Commissioner in turn was empowered to "prescribe reasonable rules and regulations governing the humane treatment, training and discipline … and classification of prisoners." *Id.* § 24–1–140. The Board could designate as a place of confinement any available, suitable, and appropriate institution or facility, whether maintained by SCDC or not. *Id.* § 24–3–20(a). We agree with defendants that these broad empowering statutes do not themselves create the liberty interest necessary to support the inmates' claim. *See Wolff,* 418 U.S. at 544–57, 94 S.Ct. at 2969–75; *Berrier,* 951 F.2d at 624–25.

■ The next possible source is the consent decree entered in *Nelson v. Leeke,* No. 82–876–2, 1986 WL 84459 (D.S.C. Apr. 1, 1986) ("the Decree"), which resolved a class-action suit brought by inmates to rectify prison conditions in South Carolina.[5] Section M of the Decree governs classification procedures. By its terms it was not self-executing, but simply obligated state officials within stated time periods "to develop" for court approval "a comprehensive classification system for assignment of [inmates] to institutions, including criteria for initial classification, reclassification and internal institutional classification." Supp. Addendum to J.A. (exhibit 1). It did, however, impose some specific obligations upon the state in developing and implementing the classification system to be submitted pursuant to the decree.

Specifically, the state agreed that each "security classification shall be guided by rational, objective, criteria derived from behavioral observations;" that inmates "shall not be disqualified from any custody or security classification solely by virtue of any single criteria such as detainers, length of sentence,

---

**4.** The statutes have since been amended in ways not affecting the merits of this appeal. *See* S.C.Code Ann. # 8E8E # 24–1–40, –90, –100, –130 (Law.Co-op.Supp.1993).

**5.** We assume, for purposes of this appeal, that a federal consent decree that did meet the appropriate legal entitlement test could itself serve as a "state law" source of constitutionally protected liberty interests where, as here, the state's entry into the decree was legislatively authorized. *See Rodi v. Ventetuolo,* 941 F.2d 22, 26–28 (1st Cir. 1991) ("rules" promulgated under such a decree may be such a source).

consecutive sentence, date until parole or the fact of a disciplinary conviction;" that "[c]lassification shall be based upon an evaluation of the accumulation of identified, relevant and rational factors and standards;" that it would not "discriminate [in matters involving security and custody classification] on the basis of race, religion, sex, creed or national origin;" and that no inmate "shall be classified under a more restrictive security designation or confined under more restrictive conditions than is required by legitimate security requirements."

The consent decree does not itself create a protected liberty interest under the controlling principles we have identified. In the first place, as indicated, it does not purport to be self-executing in the matter of inmate security and custody classifications. It obviously imposed enforceable legal and contractual obligations upon the state to devise, submit, and upon approval, implement a systematic classification procedure having certain defined features. Had it failed to devise and submit for judicial approval such a classification system, the decretal obligation to do so could have been judicially enforced against it, including a requirement that it modify any system submitted because of failure to conform to specific obligations undertaken in the consent decree. But the consent decree does not itself provide the operational details of a classification system in which could be found the "specific substantive predicates" and "explicitly mandatory language" dictating particular classification divisions that are necessary to create a protected liberty interest. Though, as indicated, the consent decree imposed some obligations upon the state respecting certain features of the classification system it must devise and implement, none—even were they considered self-executing in equity—have the required degree of concreteness to meet the "legal entitlement" test. They require, as a general matter, procedures that insure rationality and objectivity rather than arbitrariness or invidious discrimination or reliance upon any one factor alone in making classification decisions. But these fall far short of establishing "specific substantive predicates" for application to particular facts, and the general obligation undertaken by the state is in fact described

as one to be "guided" rather than to be "bound" by these general standards in making classification decisions. The nearest that any could be thought to come to a "mandatory, substantive predicate" is that which obligates the state not to classify less favorably than is "required by legitimate security requirements." But even that falls far short of "imposing substantive limitations on official discretion" to decide what "security" may require under the constantly changing conditions of prison administration.

■ The most likely source of the required liberty interest here lies in the operational classification regulations which the state prison officials put in place, with prior court approval, pursuant to the obligations imposed by the consent decree. *See* note 5, *supra.* Upon considering them, we conclude that neither do they create the required liberty interest; they too fail to "impose substantive limitations on official discretion" in making classification decisions. Instead, though they provide procedural safeguards and substantive criteria for making base-line classification decisions, these are made only as recommendations that are subject to discretionary review and rejection by higher-level prison officials. The regulatory regime does not in the end, therefore, give rise to "legal entitlement" to a particular classification once specific substantive predicates have been established. A review of the regime's critical features demonstrates this.

Pursuant to the obligation assumed in the consent decree, the regulations provide at the outset that classification is to be "[b]ased on legitimate security requirements" and "[n]o more restrictive than security or bedspace limitations require." SCDC Reg. 1200.1(6)(b)(6)(a)–(b). They then establish an *objective, multi-factor scoring system,* which is to yield a recommended custody/security level for each inmate upon his or her incarceration. SCDC Reg. 1200.5, p. 3 (Risk Assessment). Reclassification reviews occur at three- or six-month intervals, depending on the length of the inmate's sentence, or as required to effect administrative transfers or disciplinary actions. *Id.* pp. 2, 6.

Classification committees review each recommended custody/security level and "decide on the appropriate classification. Such considerations as work record, disciplinary record, behavior, and attitude can affect the custody and security assignment." *Id.* p. 4. The committee decision is subject to the warden's approval. Inmates seeking to advance in status from B (medium custody) to A (low custody) must receive authorization not only from their classification committees, but also from "the Institution Head and Regional Administrator." *Id.* p. 5. Inmates convicted of murder, as was Slezak, must receive additional approval from the Deputy Commissioner for Operations before making that advancement. *Id.*

Inmate participation in classification hearings is governed by SCDC Reg. 1200.1(6)(b), which provides that inmates "will be given written notice at least 48 hours prior to [a] hearing" and that inmates "will be present" at hearings except during deliberations unless they waive the right to be present or "the classification matter is minor or routine." Classification decisions are not grievable, but an inmate may appeal any decision that denies his or her classification request for the second time. SCDC Reg. 1200.1(7).

There is no question that the regulations, and particularly the classification scoring sheet devised in compliance with the *Nelson* decree, provide "substantive predicates to govern official decisionmaking." *Berrier,* 951 F.2d at 625. It is also clear that here, as in *Hewitt,* the regulations abound with mandatory language. Missing, however, is the crucial link between the substantive predicates and the mandatory language: the governing law " 'stop[s] short of requiring that a particular result is to be reached upon a finding that the substantive predicates are met.' " *Berrier,* 951 F.2d at 625 (quoting *Thompson,* 490 U.S. at 464, 109 S.Ct. at 1911). The provision of opportunities for serial review—and rejection—of classification recommendations by prison officials indicates that South Carolina has elected not to "mandate[ ] the outcome" on SCDC classification decisions.

*Id.* For the foregoing reasons, the decision of the district court is

*AFFIRMED.*