Bobby D. FITTS, No. 158545, Plaintiff,

v.

Warden S.R. WITKOWSKI; Deputy Warden Charles Brock; c/o Abrams; c/o Donoflio; Sergeant Michael Vergis; and Wayne Chastain, Investigator, each of the Perry Correctional Inst., individually and officially, Defendants.

C/A No. 6:93–2117–18BC.

United States District Court,
D. South Carolina,
Greenville Division.

March 28, 1996.

Armand G. Derfner, Charleston, SC, for plaintiff.

Merl F. Code, Greenville, SC, for defendants.

**ORDER**

NORTON, District Judge.

This § 1983 action is before the court upon the magistrate judge's recommendation that Defendants' Motion for Summary Judgment be granted in part and denied in part. This

record includes a report and recommendation of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1)(B).

## I. TIME FOR FILING OBJECTIONS

A party may object, in writing, to a magistrate judge's report within ten days after being served with a copy of that report. 28 U.S.C. § 636(b)(1). Three days are added to the ten day period if the recommendation is mailed rather than personally served. The magistrate judge's report and recommendation was filed on February 15, 1996. Defendants filed their timely written objections with the court on March 1, 1996. Plaintiff filed his timely written objections on March 11, 1996.

## II. REVIEW OF MAGISTRATE JUDGE'S REPORT

This court is charged with conducting a *de novo* review of any portion of the magistrate judge's report to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). A review of the record indicates that the magistrate judge's report accurately summarizes this case and the applicable law. Accordingly, the magistrate judge's report is incorporated into this order.

## III. BACKGROUND

Plaintiff, an inmate at Perry Correctional Institution ("Perry"), filed his complaint on August 18, 1993, alleging that the following facts establish that Defendants violated Plaintiff's constitutional rights. Plaintiff claims that on March 27, 1993, Defendants Donoflio and Abrams, officers at Perry, were conducting a routine search of the cell occupied by Plaintiff and inmate Billy Joe Durham, when Plaintiff and Officer Abrams argued and called each other racial slurs.[1] The officers finished the search without further incident. Plaintiff alleges that when the officers left the cell, they took Plaintiff's bandanna and dropped it on the floor outside the cell. Plaintiff then tried to retrieve his bandanna by tying a shoe string to a shoe and dragging the bandanna towards him. As Plaintiff was doing this, Officer Abrams returned and began to shut the outer door to Plaintiff's cell.[2] Plaintiff states that he asked Officer Abrams to at least let Plaintiff retrieve his shoe, but that Abrams continued to push the door against Plaintiff's arm while Plaintiff pushed back. Officer Donoflio arrived and began helping Abrams shut the door.

Plaintiff alleges that Officer Abrams then "turned his head around the corner of the door and spit in Plaintiff's face at which time plaintiff let go of the door to be closed." (Compl. at 4). Plaintiff further alleges that he began "hollering" for a supervisor to let him or her know what had happened, but Defendant Brown "hollered" back that he did not want to hear Plaintiff's complaint. Twenty minutes later, Defendants Brown and Vergis arrived at Plaintiff's cell and informed Plaintiff "that he was going to 'D Dorm' to be chained up, spread eagle on a bunk as punishment because defendant Abrams said that plaintiff had spit on him, this to cover up his own illegal actions." (Compl. at 4). Plaintiff states that as Officers Brown and Vergis led him down the hall in handcuffs, Defendant Abrams was standing in the hall laughing at Plaintiff. Plaintiff approached Abrams and stated that, "if I have to be punished for something that I didn't do, I may as well do it," and spit at Abrams. At this point Plaintiff states that Defendant Vergis "slammed" Plaintiff on his head and back so that Plaintiff lay on the floor with Vergis' body lying across Plaintiff's upper body. Defendant Abrams then allegedly "reached over defendant Vergis and punched plaintiff in the head and ear." (Compl. at 4).

Defendants assert that Plaintiff spit on Abrams, not the other way around, during the altercation which led to Plaintiff's four point restraint as well as when Plaintiff was being led down the hallway. Defendants do

---

1. Plaintiff is white, and Officer Abrams is black.

2. Inmates' cells at Perry have two doors, an inner door made of bars, and a solid outer door.

Officer Abrams was closing the outer door while Plaintiff's arm was sticking through the inner door. (Dep. of Pl. at 10–11).

not deny that Vergis knocked Plaintiff to the floor and lay on him, nor do they deny that Abrams hit Plaintiff while he was handcuffed and immobilized on the ground. The Report on the Use of Force prepared by Officer Brown reads: "While being escorted from C–Dormitory, Z-wing, Cell # 3, once in the sallyport area, Inmate Fitts struck Officer Abrams in the face by spitting. Sergeant M. Vergis then placed Inmate Fitts on the floor. Officer Abrams then struck Inmate Fitts in the facial area with his closed fist. Officer Abrams was instructed to leave the wing and not to return until Inmate Fitts had departed the dormitory." (Defs.' Mem.Supp. M.Summ.J., Attach. A). Plaintiff alleges that he received injuries from Officer Abrams' assault in the form of a bump on the head and swelling around his left ear.

After this altercation, Plaintiff was placed in four point restraints, which involved the officers' stripping a cell, applying the necessary restraints to the bunk, ordering Plaintiff to lie face down on the bunk, and then attaching the restraints. (Defs.' Mem.Supp.M.Summ.J.Attach. A). The officers applied handcuffs to Plaintiff's wrists and leg irons to Plaintiff's ankles, so that Plaintiff was in a "spread eagle" position. (Compl. at 4). Plaintiff was kept in four points for almost four hours, (Defs.' Mem. Supp.M.Summ.J.Attch. B), and alleges that he suffered extreme mental anguish and suffering as a result. (Compl. at 5).

## IV. PROCEDURAL HISTORY

Plaintiff brought suit alleging three claims for relief: (1) Defendants used excessive force against him; (2) Defendants' use of four point restraints violated his right to be free from cruel and unusual punishment pursuant to the Eighth Amendment; and (3) Defendants' use of four point restraints violated his rights to due process of law guaranteed by the Fourteenth Amendment. Defendants filed their first motion for summary judgment on July 14, 1994. This court filed an order on March 31, 1995, granting the motion for summary judgment on the claim of excessive force as to all Defendants except Defendant Abrams, and denying the motion

for summary judgment as to the issue of four point restraints. The court also granted Plaintiff the opportunity to interview witnesses, and ordered Defendants to participate in reasonable discovery.

On May 25, 1995, Defendants filed their second motion for summary judgment, based solely on the issue of whether Plaintiff's rights were violated by the use of four point restraints.[3] Defendants argue they are entitled to summary judgment because (1) the *Nelson* consent decree does not create a liberty interest; (2) Defendants complied with the *Nelson* consent decree; and (3) in any event, Defendants are entitled to qualified immunity. Defendants' motion does not address the issue of whether Plaintiff's Eighth Amendment rights were violated by the use of four point restraints, except to the extent that qualified immunity relieves Defendants from individual liability on this claim.

## V. ANALYSIS

A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate when there exists no genuine issue as to any material fact and a decision may be rendered as a matter of law. Fed.R.Civ.P. 56. The party moving for summary judgment has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The facts must be viewed in the light most favorable to the non-moving party so that any doubt as to the existence of a genuine issue of material fact will be resolved in favor of denying the motion. *Adickes,* 398 U.S. at 157, 90 S.Ct. at 1608; *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

### A. Liberty Interest

■ Plaintiff claims that Defendants' use of four point restraints in this case violated his right not to be deprived by the state of liberty without due process of law. U.S. Const. amend. XIV, § 1. Plaintiff's argu-

---

3. Defendants' motion does not address the issue of Officer Abrams' use of excessive force.

ment is based on the notion that Defendants' use of four point restraints deprived him of a liberty interest created by the Nelson Consent Decree ("the Decree"), a settlement entered into by the State of South Carolina to settle a class action suit,[4] and that this liberty interest is protected by the Due Process Clause.

The magistrate judge determined that the Decree creates a liberty interest in freedom from four point restraints. First, in *Slezak v. Evatt*, 21 F.3d 590 (4th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994), the Fourth Circuit Court of Appeals applied the analysis set forth in the Supreme Court decisions of *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), and determined that the same consent decree at issue here did not create a protectable liberty interest in custody or security classifications. That analysis required the court to look at the language of the applicable state law for "explicitly mandatory language in connection with requiring specific substantive predicates." *Slezak*, at 594, *citing Hewitt*, 459 U.S. at 472, 103 S.Ct. at 871. The court construed the Decree's language concerning classification decisions as lacking "the required degree of concreteness" because the Decree did not provide the operational details of a classification system, but rather imposed obligations on the state to devise its own classification procedure following the guidelines therein. *Slezak*, at 596.

As the magistrate judge found in his report and recommendation, the language of the Decree concerning four point restraints is clearly distinguishable. The Decree provides in relevant part:

4. The use of four-point restraints (patient immobilization) shall not be used except upon the order of a physician. Four point restraint shall be used only as a last resort to prevent harm or physical danger to self and others. Under no circumstances shall such restraints be applied to enhance security of the facility or prevent escape, or punish the inmate. Restraints shall be used no longer than the condition prevails and the use of restraints beyond a period of four (4) hours must be approved by the chief medical doctor for the Department or his medical staff designee. In addition to review by the prescribing physician, any Plaintiff so restrained shall be the subject of continuous observation during the period of restraint and the need for restraint shall be reevaluated at fifteen (15) minute intervals. A medical and observation log of such evaluation shall be maintained. All use of four point restraints shall be reported to the institutional warden and the Department's legal office and shall comply with all other provisions of this decree.

5. There shall be no shackling or chaining of any prisoner to any solid object, except as provided in (4) above.

Consent Decree, Part III, Section P; *see Plyler v. Leeke*, No. 3:82–0846–2, 1986 WL 84459 (D.S.C.), at *23. Unlike its provisions for a classification system, the Decree's requirements concerning four point restraints are "self-executing," are "explicitly mandatory," and contain their own operational details dictating "specific substantive predicates" to the imposition of four point restraints. Based on the analysis in *Slezak*, the Decree creates a liberty interest in four point restraints.

But the test applied in *Slezak* is no longer the proper analysis. In *Sandin v. Conner*, —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court reevaluated the mechanical method by which prior cases construed the language of state rules as being either mandatory or discretionary. According to the *Sandin* court, the problem with that mode of analysis is that,

In a series of cases since *Hewitt*, the Court has wrestled with the language of intricate, often rather routine prison guidelines to determine whether mandatory language and substantive predicates created an enforceable expectation that the state would produce a particular outcome with respect to the prisoner's conditions of confinement.

. . . . .

---

4. *See Plyler v. Leeke*, No. 82–876–2, 1986 WL 84459 (D.S.C. March 26, 1986).

By shifting the focus of the liberty interest inquiry to one based on the language of a particular regulation, and not the nature of the deprivation, the Court encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges. Courts have, in response, and not altogether illogically, drawn negative inferences from mandatory language in the text of prison regulations. The Court of Appeals' approach in this case is typical: it inferred from the mandatory directive that a finding of guilt "shall" be imposed under certain conditions the conclusion that the absence of such conditions prevents a finding of guilt.

*Sandin,* —— U.S. at ——, 115 S.Ct. at 2299. The Court recognized that states may create liberty interests which are protected by the Due Process Clause, but that "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2300.

The magistrate judge looked at both *Slezak* and *Sandin,* and determined that despite the limits placed on the mandatory/discretionary distinction by *Sandin,* the Decree could still be interpreted as creating a liberty interest in freedom from four point restraints. Defendants' objections to the magistrate judge's report do not address his finding that a liberty interest is created by the consent decree, but rather focus on the finding that Defendants did not comply with that decree.

The magistrate judge's analysis must be reevaluated in light of the Fourth Circuit Court of Appeals' opinion in *Williams v. Benjamin,*[5] decided on March 6, 1996. *Williams* involved the claim of a prisoner at Lieber Correctional Institution in South Carolina that prison officers violated his Eighth

Amendment and due process rights when they sprayed him with mace and then confined him in four point restraints on a metal bunk bed for eight hours, without allowing him to wash off the mace or use the bathroom. The lower court had granted summary judgment to the defendants on Williams' due process claim, finding that the use of four point restraints or chemical munitions is not a violation of any federal law or statute. *Williams,* at 768–69.

While Williams' argument on the due process issue was "not absolutely clear," the court interpreted plaintiff's claim as being that Policy 1500.12 (which incorporated provisions of the Nelson consent decree) provided him with a liberty right to be free from punishment in four point restraints. *Id.* The defendant officers did not argue that violation of the Policy cannot provide the basis for a § 1983 claim, but argued only that their actions did not violate the Policy.

Without deciding whether the Policy or the consent decree establish a liberty interest protected by the due process clause, the court found that the plaintiff could not establish a procedural due process violation in that case. First, the court noted:

> Williams has a forceful argument that Policy 1500.12 and the Nelson Consent Decree are written in "unmistakably mandatory" language and create an enforceable expectation on the inmate's part that he will not be placed in four-point restraints absent enumerated substantive predicates. The regulations provide that four-point restraints will not be imposed except as a last resort to prevent harm, and with medical approval. To create a liberty interest, such mandatory language is required. See *Washington v. Harper,* 494 U.S. 210, 221, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990). For the above reasons, Williams has a persuasive argument that the regulations create a protected liberty interest. We note merely that Williams' arguments are persuasive and forceful without deciding the issue, because even if we accept his

---

**5.** *Williams v. Benjamin,* 77 F.3d 756 (4th Cir. 1996). The magistrate judge noted in his report and recommendation that oral arguments had been heard but no decision rendered in *Williams.* (Mag.J.'s Rep.Rec. at 9 n. 10).

position, he still cannot establish a procedural due process violation.

*Williams,* at 769 (footnotes omitted). Presumably because its analysis has been disapproved, the court did not discuss *Slezak.* The court did discuss *Sandin v. Conner,* noting that the Supreme Court in that case required that state-created liberty interests be generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Williams,* at 769. The court suggested that the use of four point restraints falls within the language of *Sandin,* and that, "Indeed, the limitations and protections in Policy 1500.12 and the consent decree demonstrate the 'atypical and significant' nature of the imposition of the restraints." *Id.*

The court also noted in a footnote that the Policy does not implicate one of the concerns of the Court in *Sandin:*

> There, the Court noted that the proliferation of alleged liberty interests based on the language of regulations worked to punish those prisons that (laudably) created regulations to control correctional officers' discretion. *Sandin,* —— U.S. at ——, 115 S.Ct. at 2299. In this case, the State did not adopt the Policy wholly of its own accord but as a result of a federal class action suit.

*Williams,* at 1769 n. 9.

Based on this analysis, the court agrees that *Sandin*'s holding is consistent with a finding that the Decree creates a liberty interest in freedom from four point restraints. The reasons cited in *Sandin* for limiting the situations in which prison regulations create liberty interests are not evident here. In addition to the fact that the Decree was adopted in settlement of a class action suit rather than by the prison itself, this case is distinguishable from *Sandin* because Plaintiff is not asking that this court find "a negative implication from mandatory language" in the Decree. *Sandin,* —— U.S. at ——, 115 S.Ct. at 2300; *see supra* text at 682–83. Instead, the Decree explicitly prohibits the use of four point restraints without the requisite procedures.

The reasons the court in *Williams* rejected the plaintiff's procedural due process claim are that (1) Williams made no argument as to what sort of procedural protections were required; (2) the restraints were imposed in response to a disturbance, in which case process is not possible; and (3) Williams made no allegation that his post-deprivation state remedies were inadequate. This case is distinguishable in all three respects.

First, Plaintiff has made an argument about what procedural protections were required. Plaintiff has pointed to the language of the consent decree requiring that four point restraints shall not be used except upon order of a physician, that they shall be used only as a last resort to prevent harm or physical danger to self or others, that they shall not be used to enhance security of the facility or to punish the inmate, and that they shall be used no longer than the condition prevails. (Pl.'s Sec.Opp.Defs.' M.Summ.J., at 2–3, *citing* Nelson Consent Decree. Sec. P(4)–(5), pp. 50–51). Furthermore, Plaintiff pointed out that any person in four point restraints shall be the subject of continuous observation, and the need for restraint shall be reevaluated upon fifteen-minute intervals. *Id.* A review of the record reveals that Plaintiff has presented facts which support his contentions that Defendants did not use the restraints as a last resort in this case, that the restraints were used to punish Plaintiff, and that the need for his continued restraint was not monitored as required by the consent decree.

Second, this is not a case in which a disturbance threatened prison security and made predeprivation protections impossible. In *Williams,* the disturbance to which the officers were reacting involved seven inmates in the administrative segregation unit who were throwing what they claimed to be water at a prison officer, and did not respond to an order to stop, an order to remove their arms from their food service windows, or a threat to use mace. In the two cases cited in *Williams* as involving disturbances where process is not possible, the first involved three prisoners' flooding their cell block with water, *Lunsford v. Bennett,* 17 F.3d 1574 (7th Cir.1994), and the second involved a

prison riot during which one prisoner was killed and another prisoner held a prison official hostage at knife-point. *Albers v. Whitley*, 546 F.Supp. 726 (D.Or.1982).[6] Here, Plaintiff was the only prisoner involved. The only evidence that Plaintiff did anything wrong before Defendants made the decision to four-point him is Officer Abrams' statement that Plaintiff spit on him, which is contradicted by Plaintiff. Additionally, Defendants assert that they spent twenty minutes after Plaintiff allegedly spit on Officer Abrams to acquire the necessary approval and signatures to use the four-point restraints, which shows that process was not "impossible."

The court also notes that the two cases cited in *Williams* as standing for the proposition that process is not possible in response to a disturbance both concerned the availability of notice *and a hearing* before remedial action is taken. In *Lunsford,* the court found that the plaintiffs were not entitled to due process before being shackled to their cells so that officials could mop the cell block the plaintiffs had flooded with water. The court cited the Supreme Court's decision in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), which held that the Due Process Clause entitled state prisoners to notice and some kind of hearing in connection with serious disciplinary action. Then the court stated, "But these pre-deprivation protections could not reasonably be applied to a prison disturbance situation where institutional security is threatened." *Lunsford,* 17 F.3d at 1583.

Similarly, *Albers* concerned the necessity that officers afford a prisoner due process in the form of a hearing before taking disciplinary action. The court found that "in the midst of the emergency created by riotous inmates holding a guard hostage, the Constitution simply does not mandate a due process hearing for each inmate potentially affected by remedial action." *Albers,* 546 F.Supp. at 732. In contrast, this case does not concern the necessity of a full-blown hearing prior to officials' making any disciplinary determination.

Furthermore, as the court in *Williams* concedes, the consent order arguably creates a liberty interest not only in pre-restraint process, but also in post-restraint process. In rejecting Williams' claim because the restraints were imposed in response to a disturbance, the court stated:

This point gives us some pause as it relates to this case. Simply because the initial application of the restraints occurred soon after a disturbance does not mean that four-point restraints may be imposed indefinitely. At some point in time, an inmate so restrained would be entitled to some procedural protection to ensure that his liberty interest was not being arbitrarily and capriciously denied. In this appeal, we decline to resolve where that point exists.

*Williams,* at 770 n. 10. Plaintiff has raised a factual issue as to whether Defendants continued to keep him in four point restraints for almost four hours for arbitrary and capricious reasons.

Finally, Plaintiff has alleged that his post-deprivation state remedies were inadequate. In his complaint, Plaintiff alleged that the grievance procedures at Perry are not adequate to protect the inmates. (Compl. at 2). Plaintiff also states that he complained to Investigator Chastine who "covered it up." (Compl. at 2). In Plaintiff's deposition, he claims to have witnessed officers throwing away grievance petitions signed by prisoners. (Pl.'s Dep. at 45). Plaintiff also alleges that there was an infirmity in his disciplinary hearing before the Justice Committee, in which Plaintiff was found guilty of two counts of assault and battery. (Pl.'s Dep. at 48–49).

Based on the court's review of prior case law and of the *Williams* decision, and its agreement with the magistrate judge's analysis, the court denies Defendants' motion

---

**6.** The court in *Williams* cited the district court decision in *Albers v. Whitley.* That judgment was affirmed in part and reversed in part by *Albers v. Whitley,* 743 F.2d 1372 (9th Cir.1984), which judgment was in turn reversed by *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). Neither subsequent case dealt with the issue of procedural due process, because the plaintiff did not urge that claim as a separate ground for relief from his Eighth Amendment claim.

based on the existence of a liberty interest. Defendants have failed to show that, as a matter of law, the Nelson consent decree does not confer on Plaintiff a liberty interest to be free from four point restraints without due process of law.

## B. Compliance with the Nelson Decree

 Defendants' second ground in support of their motion for summary judgment is that, even if the Nelson decree creates a liberty interest, Plaintiff has no claim for relief because Defendants complied with that decree. The Decree requires that four point restraints shall be used only upon the order of a physician, only as a last resort to prevent harm or physical danger to the prisoner and others, and never for purposes of punishment. Consent Decree, Part III, Section P, *see supra* text at 8. The restraints are to be used no longer than the condition prevails, the inmate is to be monitored continuously while restrained, and the need for restraint is to be reevaluated every fifteen minutes. *Id.*

Defendants argue that they complied with the decree because they consulted a physician, they maintained an observation log, they notified the warden and the legal office of the use of four point restraints, and Plaintiff was under observation while he was restrained. The magistrate judge acknowledged that, according to the records supplied to the court by Defendants, these aspects of the decree were followed. But the magistrate judge found that this did not remove any factual issue as to Defendants' compliance with the decree, because Defendants have not shown that their use of the four point restraints in this instance was for a purpose other than punishment. Plaintiff also raises the issue that Defendants failed to review the continuing need for restraint once the four points were applied.

Defendants object to the magistrate judge's finding based on their assertion that the court "incorrectly interpreted and ap-

plied the factual findings and inferences concerning the twenty minute time lapse between the initial incident and the time the officers returned to take Plaintiff to D–Dorm for use of four-point restraint." (Defs.' Obj. Mag.Rep.Rec. at 1). The magistrate judge found that the twenty minute time lapse between the incident and the officers' return, in which Plaintiff remained in his cell and was apparently not a threat to himself or to anyone else, lent support to Plaintiff's claim that Defendants' purpose in four-pointing him was not to prevent Plaintiff from harming himself or others, but merely to punish Plaintiff.

Defendants are correct in asserting that they should not be penalized for taking the time to comply with the Decree, and if this were Plaintiff's only evidence that he was restrained for punishment purposes, Defendants may be entitled to summary judgment on this issue. But Plaintiff also points to the fact that the only reason given by Defendants for applying the restraints is that Plaintiff spit at Officer Abrams. Whether this is true, and whether it rises to the level of potential harm required by the decree, are factual issues not disposable on summary judgment.

Finally, Defendants argue that even if they restrained Plaintiff for purposes of punishment they are entitled to summary judgment. Defendants assert that the Supreme Court's decision in *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), modified the Fourth Circuit's decisions in *Slezak* and *Samuels v. Taylor,*[7] by overruling the portions of those opinions which prohibited the use of four point restraint as a measure of punishment.

This court does not read *Sandin* as doing any such thing. The Court rejected the broad argument that any state action taken for a punitive reason encroaches upon a liberty interest under the Due Process Clause

---

7. *Samuels v. Taylor,* No. 94–6325, 1994 WL 557067 (4th Cir. October 12, 1994). *Samuels* is an unpublished opinion by the Fourth Circuit Court of Appeals in which the court reversed the lower court's grant of summary judgment to the defendants on the same issue presented here: "the Decree created a liberty interest in freedom from four-point restraints until the mandatory prerequisite findings and doctor's orders were in place. Samuels's claim that the use of the four-point restraints was in violation of the Decree stated a cause of action under the Fourteenth Amendment." *Id.* at 3.

even in the absence of any state regulation. *Sandin*, —— U.S. at ——, 115 S.Ct. at 2300. But here the Decree itself prohibits the use of four point restraints for the purpose of punishment. The Court found that states may create liberty interests in the form of "freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* The use of four point restraints is not like the segregated confinement at issue in *Sandin* which, "with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody." *Id.* This court cannot say as a matter of law that the shackling of Plaintiff's arms and legs to a metal bunk bed with handcuffs and leg irons did not, as a matter of law, "work a major disruption in his environment." *Id.; see also Williams*, 77 F.3d at 768–69 (noting that the limitations and protections in Policy 1500.12 and the Decree demonstrate the 'atypical and significant' nature of the imposition of the restraints).

### C. Qualified Immunity

⬛ Finally, Defendants argue that they are entitled to qualified immunity as a matter of law. The magistrate judge found that Defendants' motion should be granted as to qualified immunity with respect to Plaintiff's due process and Eighth Amendment claims arising from the use of four point restraints. In *Pritchett v. Alford*, 973 F.2d 307 (4th Cir.1992), the court set forth a three step inquiry for determining whether the defense of qualified immunity is applicable. The court must identify the specific constitutional right allegedly violated, inquire whether the right was clearly established at the time of the alleged violation, and then determine whether a reasonable person in that official's position would have known that his conduct violated that right. *Pritchett*, at 312; *see Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396.

The magistrate judge found that neither of Plaintiff's claims with respect to the use of four point restraints was clearly established at the time of the alleged violation on March 27, 1993. Because *Slezak v. Evatt*, 21 F.3d 590 (4th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 235, 130 L.Ed.2d 158 (1994), which first suggested that a liberty interest may be created by the Decree, was not decided until April of 1994, the magistrate judge found that the due process right not to be subjected to four point restraints was not clearly established in 1993. Furthermore, because many courts had approved the use of four point restraints in a variety of circumstances, the magistrate judge found that the claim that four point restraints may constitute cruel and unusual punishment was also not clearly established at the time of the alleged violation.

Plaintiff objects to the magistrate judge's findings on the basis that the language of the Decree is clear and Defendants should have known that a protected liberty interest was created. However, simply because the settlement agreement set forth clear guidelines on the use of four point restraints does not mean that the Decree automatically created a liberty interest protectable by the Due Process Clause. As the foregoing analysis suggests, that issue is still not "clearly established."

Plaintiff also argues that Defendants were performing a ministerial duty and not a discretionary function, and that Defendants had a clear duty to perform the regulations of the Decree. While the Supreme Court has held that "[i]mmunity generally is available only to officials performing discretionary functions," *Harlow*, 457 U.S. at 816, 102 S.Ct. at 2737, Plaintiff has made no showing that the acts performed by Defendants were purely ministerial. A ministerial duty is "[o]ne regarding which nothing is left to discretion—a simple and definite duty, imposed by law, and arising under conditions admitted or proved to exist." Black's Law Dictionary 996 (6th ed. 1990). Clearly, even if Defendants' decision to place Plaintiff in four point restraints is ultimately found to have violated the Decree, the circumstances under which Defendants made their decision are not "admitted or proved to exist." Even though the Decree sets forth clear guidelines as to the use of four point restraints, the court cannot say that the challenged conduct "involves [no] element of judgment or choice." *Pie-*

*chowicz v. United States,* 885 F.2d 1207, 1211 (4th Cir.1989) (citations omitted).

Plaintiff does not address his objections to the magistrate judge's finding on the issue of the Eighth Amendment violation. But this court notes that the finding of the magistrate judge is lent further support by the recent decision of *Williams v. Benjamin,* 77 F.3d 756, 771 (4th Cir.1996) (Hamilton, C.J., concurring in the judgment) (noting that the defendants failed to raise the issue of qualified immunity, but that in light of the line of authority upholding four point restraints for extended periods of time, a reasonable officer may well not have known that the defendants' actions would violate the Eighth Amendment).

## VI. CONCLUSION

It is therefore,

**ORDERED,** for the above reasons and those articulated by the magistrate judge, that Defendants' Motion for Summary Judgment be **GRANTED** as to all Defendants on the issue of qualified immunity from suit on Plaintiff's claims involving the use of four point restraints, and that Defendants' Motion for Summary Judgment be **DENIED** on the remaining issues.

**AND IT IS SO ORDERED.**

### NOTICE OF RIGHT TO APPEAL

Plaintiff is hereby notified that he has the right to appeal this order within thirty (30) days from the date hereof, pursuant to Fed. R.App.P. 3–4.