In the

# United States Court of Appeals

## For the Seventh Circuit

No. 05-3964

RICHARD L. GRENNIER,

*Plaintiff-Appellant,*

*v.*

MATTHEW J. FRANK, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 05-C-0081-C—**Barbara B. Crabb**, *Chief Judge*.

SUBMITTED JUNE 19, 2006—DECIDED JULY 5, 2006

Before COFFEY, EASTERBROOK, and SYKES, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*.    Since 1973, when he was convicted of first-degree murder, Richard Grennier has been a prisoner of Wisconsin. See *Grennier v. State*, 70 Wis. 2d 204, 234 N.W.2d 316 (1975). His sentence is life imprisonment. He also has convictions for arson and burglary. Grennier wants to be released on parole, but his every request has been denied with two observations: first that he has not been punished sufficiently and second that the populace would not be safe with him at large unless he has completed treatment for his sexual disorders. (He began a treatment program but flunked out because of misconduct.) Grennier murdered a teenaged hitchhiker, mutilated her body, and raped her corpse. He observes, however, that he

has not been convicted of a sex offense, and he maintains that labeling him a "sex offender" on the basis of the necrophilia and other information the state possesses about his sexual proclivities violates the due process and ex post facto clauses of the Constitution because it stigmatizes him and hampers his chance for parole release.

Grennier's suit rests on 42 U.S.C. §1983, which is proper even though the end in view is release on parole. See *Wilkinson v. Dotson*, 544 U.S. 74 (2005). The district judge granted summary judgment to the defendants after concluding that Wisconsin's parole system does not afford lifers any liberty or property interest in the opportunity for release. Prisoners with fixed terms presumptively are entitled to parole after two-thirds of their sentences. See Wis. Stat. §302.11(1). We held in *Felce v. Fiedler*, 974 F.2d 1484, 1491-92 (7th Cir. 1992), that a liberty or property interest arises at that point. But there is no such thing as "two-thirds of a life sentence"; people in Grennier's position never acquire a presumptive entitlement to release. See Wis. Stat. §302.011(1m). They are not even eligible until they have served 20 years, and from that point forward the system is wholly discretionary—no fact that any prisoner could prove at a hearing would entitle him to release. Wis. Stat. §304.06(1)(b).

It takes mandatory language (and thus an entitlement contingent on facts that could be established at a hearing) to create a liberty or property interest in an opportunity to be released on parole. See *Greenholtz v. Inmates*, 442 U.S. 1, 7-11 (1979); *Heidelberg v. Illinois Prisoner Review Board*, 163 F.3d 1025 (7th Cir. 1998) (Illinois parole system). We have never considered (in a published opinion, anyway) how Wisconsin's parole system for offenders serving life sentences should be classified, but the subject is straightforward. We agree with the district court that Grennier lacks a liberty or property interest. See also *Jones v. Puckett*, 160 F. Supp. 2d 1016, 1023 (W.D. Wis. 2001).

Accordingly he has no entitlement to a hearing under the due process clause. (In 1998 Wisconsin enacted a determinate sentencing scheme that alters which inmates have access to parole and on what terms. See *State v. Stenklyft*, 2005 WI 71 ¶¶16-27, 281 Wis. 2d 484, 697 N.W.2d 769. Our description and conclusion is limited to the statutes that govern older crimes.)

The claim under the ex post facto clause fails for essentially the same reason. Statutes and regulations governing parole are "laws" for purposes of this clause, and states may not change their laws in ways that increase the punishment for earlier crimes. See *Garner v. Jones*, 529 U.S. 244 (2000); *California Department of Corrections v. Morales*, 514 U.S. 499 (1995). But Wisconsin has applied to Grennier the same laws that were in force when he committed his crime.

Defendants allow that Wisconsin has become less willing to release persons convicted of serious offenses and now demands assurance that interests in deterrence, desert, and public safety have been satisfied before a murderer will be let free. Neither the ex post facto clause nor the due process clause has anything to say about how discretion will be exercised under an open-ended system, however. See *Blakely v. Washington*, 542 U.S. 296, 308-10 (2004). Grennier has no more entitlement to a liberal release policy than he would have had to be sentenced by a judge who favored home confinement over prison. The constitutional interest is in the rules and statutes—the "laws" to which it refers—rather than the attitudes of public officials who administer a discretionary system. See *Prater v. U.S. Parole Commission*, 802 F.2d 948 (7th Cir. 1986) (en banc). Parole officials who become more concerned with public safety—and who act on that concern by insisting that prisoners complete sex-offender treatment programs before release—do not violate the Constitution. See, e.g., *McKune v. Lile*, 536 U.S. 24 (2002).

Grennier maintains that his situation differs from Lile's because Lile was *convicted* of a sex offense, while his convictions are for murder, arson, and burglary. He relies on four decisions that, as he reads them, hold that the stigma of being called a "sex offender" is enough by itself to deprive a person of liberty or property. See *Coleman v. Dretke*, 395 F.3d 216 (5th Cir. 2004); *Neal v. Shimoda*, 131 F.3d 818 (9th Cir. 1997); *Chambers v. Colorado Department of Corrections*, 205 F.3d 1237 (10th Cir. 2000); *Kirby v. Siegelman*, 195 F.3d 1285 (11th Cir. 1999). If the criminal trial does not provide the necessary process (as it did for Lile), then some later hearing is required. Doubtless these four decisions contain some language to that effect. But they do not so hold, because in each the sex-offender designation was pertinent to a decision that the court believed to entail a protected interest (such as an opportunity for parole under a non-discretionary system—say, one providing that "every well-behaved prisoner except a sex offender is entitled to parole after serving 20 years"). It was the liberty or property interest stemming from statutes and regulations, and not the "sex offender" label alone, that required the hearing.

*Paul v. Davis*, 424 U.S. 693 (1976), holds that the shame and humiliation of being called a criminal is not enough by itself to require a hearing under the due process clause. That case arose from a wanted-style poster including names and pictures of "known shoplifters" so that stores would know who to watch closely (or exclude). Being called a sex offender is more serious than being called a shoplifter, but the allegation in *Paul* was more widely circulated, and the people wrongly added to the poster must have sustained real injury to their reputations. The holding in *Paul* does not depend, however, on the degree to which the defamatory statement causes injury: the line is qualitative rather than quantitative. The Court held that a particular kind of governmental act (a public accusation of crime) does not

affect a liberty or property interest. Only when the state goes further and makes a concrete decision that affects liberty or property (such as a rule that shoplifters cannot be public employees, or must spend time in prison) is a hearing essential. Cf. *Codd v. Velger*, 429 U.S. 624 (1977); *Townsend v. Vallas*, 256 F.3d 661, 669 (7th Cir. 2001).

Any other understanding would call for hearings whenever a public official gives reasons for a decision. Suppose that instead of mentioning a treatment program the state's parole board had told Grennier that release would deprecate the seriousness of his offense because he had mutilated the victim's body. The jury found that Grennier killed the victim but not that he had mutilated her; that is not an element of murder. If he is right about the sex-offender label, then he also would be entitled to a hearing on any of the parole board's other subsidiary factual beliefs. Yet the framework of *Greenholtz* (and our holding in *Heidelberg*) distinguishes between discretionary parole systems and those that establish legitimate claims of entitlement based on specific criteria. (Grennier does not contend that *Sandin v. Conner*, 515 U.S. 472 (1995), has undermined *Greenholtz* or *Heidelberg*, though *Sandin* did jettison for some purposes the positivist approach of earlier decisions.) It would make no sense to require a hearing whenever a parole board gives reasons for its decision, but not when it remains silent. Then hearings would be unnecessary when the decision was wholly arbitrary (say, a coin flip), or when reasons were concealed (leaving the prisoner in the position of K. in Kafka's *The Trial*, clueless about what he must do to obtain freedom), but would be required when public officials acted sensibly and candidly. How could that be right?

An argument that states must supply hearings to explore the soundness of any factual propositions that affect official decisions would treat the process as the property. The Supreme Court has held otherwise. See *Olim v.*

*Wakinekona*, 461 U.S. 238 (1983). Hearings must be used to make decisions about liberty or property interests, but there is no constitutional right to hearings in the absence of such interests. Grennier does not have a liberty or property interest in the prospect of parole under Wisconsin's discretionary system. It follows that the state need not afford him hearings on any of the subsidiary factual questions—such as whether his offense was especially brutal, what risk of recidivism he would pose if released, and whether any of those new crimes might be sex offenses.

AFFIRMED

A true Copy:

       Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*