**Boyd GILMORE, Plaintiff,**

v.

**Rebecca BOSTIC, Kanawha County Adult Probation Department, West Virginia Board of Probation and Parole, Huttonsville Correctional Center Defendants: William Haines, Warden, Teresa Waid, Deputy Warden, Debra**

Cottrell, Classification Director, Kenneth Akins, Case Manager and Classification Committee Chair, Karen Teter, Records Department, St. Mary's Correctional Center Defendants: William Fox, Warden, Misty Adams, Case Supervisor, Dan Kimble, Original Classification Director, Robert Parker, Unit Manager, Russell Maston, Records Supervisor, Karol Payne, Unit Manager and Later Classification Director, Joyce Bills, Institutional Parole Officer, Mount Olive Correctional Complex Defendants: David Ballard, Warden, Tom Summerrell, Case Supervisor and Classification Committee Chair, Janet Payne, Unit Manager, Lee Harper, Case Manager, Paul Lyttle, Associate Warden of Programs, Dorothy Kerr, Classification Chair, Lori Burford, Records Supervisor, Division of Corrections Defendants: Jim Rubenstein, Commissioner, Steve Yardly, Deputy Commissioner, Charlene Sotak, Inmate Grievance Coordinator, Correctional Medical Services Defendants at Mount Olive: Cheryl Snyder, Administrator of Mental Health, Cristy Flores, MHU, Licensed Social Worker, Tim Carper, MHU, Licensed Social Worker, Correctional Medical Services, also known as CMS Corporation, Custodian of Records for Medical and Mental Health Unit Records, and West Virginia Parole Board, Defendants.

Civil Action No: 2:08–cv–326.

United States District Court,
S.D. West Virginia,
Charleston Division.

March 27, 2009.

Thomas J. Gillooly, Charleston, WV, for Plaintiff.

Teresa J. Lyons, Byrne Hedges & Lyons, Morgantown, WV, for Rebecca Bostic.

Mary Beth Chapman, Pullin Fowler & Flanagan, Beckley, WV, for William Haines, Teresa Waid, Debra Cottrell, Kenneth Akins, Karen Teter, William Fox Warden, Misty Adams, Dan Kimble, Robert Parker, Russell Maston, Karol Payne, Joyce Bills, David Ballard, Tom Summerrell, Janet Payne, Lee Harper, Paul Lyttle, Dorothy Kerr, Lori Burford, Jim Rubenstein, Steve Yardly, Charlene Sotak, West Virginia Parole Board.

Frank T. Litton, Jr., Litton Law Office, Charleston, WV, for Cheryl Snyder, Cristy Flores MHU, Tim Carper MHU.

Joseph M. Farrell, Jr., Farrell Farrell & Farrell, Huntington, WV, for Correctional Medical Services.

### MEMORANDUM OPINION AND ORDER

JOHN T. COPENHAVER, JR., District Judge.

This action was previously referred to Mary E. Stanley, United States Magistrate Judge, who has submitted her Proposed Findings and Recommendation ("PF & R") pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) on November 7, 2008.

As noted by the magistrate judge in her PF & R, the plaintiff claims that although he pled guilty to and was sentenced for the offense of burglary, he has not only been classified in the West Virginia penal system at a higher level than he believes to be appropriate but he has been designated as a "sex offender" and required to participate in sex offender treatment. His refusal to participate in the sex offender treatment program has resulted in various consequences, including denial of parole.

On December 17, 2008, the court entered an order, adopting the PF & R with respect to the motions to dismiss filed by the Honorable Louis H. Bloom, dismissing all claims against Judge Bloom, and deferring judgment on the recommendations of the magistrate judge with respect to the

remaining defendants. The court granted the parties an opportunity to conduct additional briefing on the issues addressed by the magistrate judge in her PF & R. That briefing has concluded, and the matters are ripe for disposition.

With respect to the defendants other than Judge Bloom, the magistrate judge recommends that the court order that:

1. The motion to dismiss and second motion to dismiss of Correctional Medical Services be denied without prejudice;[1]

2. The motion to dismiss filed by Rebecca Bostic be granted;

3. The amended motion to dismiss filed by the prison and parole defendants be granted as to the West Virginia Parole Board on quasi-judicial immunity; and

4. The amended motion to dismiss filed by the remaining defendants, being referred to collectively as the prison defendants,[2] be granted as to the prison defendants in their official capacity as to money damages only but not as to possible injunctive relief, be granted as to the prison defendants with respect to expunging or correcting the presentence investigation report, and be otherwise denied.[3]

Under Rule 72(b)(3) of the Federal Rules of Civil Procedure, a district judge resolving objections to a magistrate judge's PF & R "must determine *de novo* any part of the magistrate judge's disposi-

tion that has been properly objected to." Fed.R.Civ.P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

Each of the motions considered by the magistrate judge in the PF & R was a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing ... entitle[ment] to relief." Fed.R.Civ.P. 8(a)(2); *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted...." Fed.R.Civ.P. 12(b)(6).

■ The required "short and plain statement" must provide " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), *overruled on other grounds, Twombly*, 127 S.Ct. at 1969); *see also Anderson v. Sara Lee Corp.*, 508 F.3d 181, 188 (4th Cir.2007). The complaint need not, however, "make a case" against a defendant or even "forecast evidence sufficient to prove an element" of the claim. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 349 (4th Cir.2005) (quoting *Iodice v.*

---

1. Inasmuch as no objection was filed with respect to this recommendation, the court finds that the magistrate judge's recommended disposition is correct, and the motions are denied.

2. This term refers to the Huttonsville Correctional Center defendants, the St. Mary's Correctional Center defendants, the Mt. Olive Correctional Complex defendants, and the Division of Corrections defendants, all of whom

share 'the same counsel and filed their motions jointly.

3. The magistrate judge further recommends that the motion to dismiss filed by the prison and parole defendants be denied as superseded. Inasmuch as there has been no objection to this recommendation, the magistrate judge's recommendation is adopted, and that motion is denied.

*United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Instead, the opening pleading need only contain "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1965.

Application of the Rule 12(b)(6) standard also requires that the court " 'accept as true all of the factual allegations contained in the complaint. . . .' " *Erickson*, 127 S.Ct. at 2200 (quoting *Twombly*, 127 S.Ct. at 1965); *see also South Carolina Dept. of Health & Environmental Control v. Commerce and Industry Ins. Co.*, 372 F.3d 245, 255 (4th Cir.2004) (quoting *Franks v. Ross*, 313 F.3d 184, 192 (4th Cir.2002)). The court is additionally required to "draw[ ] all reasonable . . . inferences from those facts in the plaintiff's favor. . . ." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999).

## I. Rebecca Bostic

The magistrate judge recommends that the court dismiss the plaintiff's claims against Rebecca Bostic on the ground of absolute quasi-judicial immunity for her role in preparing and submitting the presentence investigation report. The plaintiff acknowledges the applicability of the doctrine of absolute immunity to probation officers for their preparation of such reports, and does not object to the finding that Bostic is immune from plaintiff's action to the extent that it concerns the preparation and presentation of the report. The court, accordingly, adopts the magistrate judge's recommendation to the extent that she suggests that the court find that Bostic is entitled to absolute immunity for her preparation and submission of the presentence investigation report.

■ The plaintiff objects to the magistrate judge's recommendation that Bostic be dismissed inasmuch as the plaintiff's allegations against Bostic, according to the plaintiff, are not limited to the judicial function of preparation and submission of a report. Rather, the plaintiff contends that Bostic acted outside the scope of her protected judicial role when, approximately one year after the plaintiff was sentenced, she responded to a request for information made by the director of classification at the Huttonsville Correctional Center regarding the substance of her presentence investigation report and supplied documents in support thereof but did not provide a copy of a July 12, 2005, letter written by Bostic to plaintiff's counsel in the underlying criminal case in which she acknowledges that the plaintiff and his wife have several differences of opinion regarding matters contained in the presentence investigation report.

The July 12, 2005, letter that is the basis of the plaintiff's claim against Bostic was written by Bostic to Peter A. Hendricks, the plaintiff's attorney in the underlying criminal case, and was entitled "Response to Exceptions." The contents of the letter indicate that it was written in response to a letter from Hendricks to Bostic containing objections and requests for corrections to the presentence investigation report.[4]

Letters such as the one sent by Hendricks to Bostic and the response written by Bostic to Hendricks are contemplated by Rule 43.01 of the West Virginia Trial Court Rules, which states that counsel for

---

4. The plaintiff objects to the July 12, 2005, letter on the ground that it does not appear on the docket in the underlying criminal case and, consequently, there is a "question of fact whether Ms. Bostic's letter . . . was actually prepared as part of Plaintiff's sentencing process, or sometime later." Inasmuch as Rule 43.01 of the West Virginia Trial Court Rules does not contemplate that letters such as the ones sent by Hendricks and Bostic be submitted to the sentencing judge for consideration, the court finds that the plaintiff's objection is based upon pure speculation and is lacking in merit.

the defendant has five days, following the probation officer's disclosure of the presentence investigation report to the defendant, to communicate to the probation officer any objections the defendant has to the contents of the report. The communication is to be made in writing, with copies served on opposing counsel and the probation officer. Upon receipt of the defendant's written objections, the probation officer may conduct further investigation, make revisions to the report, and meet with counsel to discuss unresolved factual and legal issues. The final presentence report is to be submitted to the sentencing judge along with an addendum setting forth objections that have not been resolved, along with the probation officer's recommendations.

Specifically, in the July 12, 2005 letter, Bostic addresses objections made by plaintiff's counsel relating to child support, the age of the plaintiff's ex-wife at the time she and the plaintiff began their relationship, Bostic's characterization of the plaintiff as having a tendency to elude authorities, the plaintiff's alleged use of a fraudulent birth certificate when he married his now ex-wife, and a statement by his ex-wife that she would drop her civil suit against the plaintiff if the plaintiff would relinquish his parental rights. The only matters relevant for the purposes of this action are those matters which would be pertinent to the plaintiff's classification by the division of corrections.

With regard to the age of the plaintiff's ex-wife at the time they began their relationship, the presentence investigation report indicates that the plaintiff became intimate with his ex-wife at some point by her age of fifteen to eighteen. In the July 12, 2005 letter, Bostic states that the timing of their relationship is unknown and that the victim and the defendant have a difference of opinion about when the relationship began. With regard to the plain-

tiff's use of a fraudulent birth certificate, the presentence report states that the victim has provided a document for the sentencing judge's review that shows that the plaintiff obtained a fraudulent birth certificate for her that showed her to be one year older than her real age. The letter adds that the plaintiff denies doing so.

Bostic's communication with the director of classification is reflected in a letter sent by William S. Haines, then-warden at the Huttonsville Correctional Center, to Jim Rubenstein, commissioner for the division of corrections, on July 7, 2006. This letter was apparently written after the plaintiff wrote a letter to Senator Rockefeller asserting that he was incorrectly classified. In the July 7, 2006 letter, Haines reports that the Huttonsville director of classification contacted Bostic for clarification on issues raised by the plaintiff in his letter to the Senator. The director relayed to Haines that Bostic "stands behind the veracity of her report" and mailed a more thorough report to the director, which included police reports, photographs, family court papers, letters written by the plaintiff to his ex-wife, "and various other miscellaneous documents, which reinforce the program recommendations made by Gilmore's Unit Team." Based upon the review conducted by the director of classification, Haines assures Rubenstein that the plaintiff has been classified appropriately with the information available to the classification team.

The question before the court is whether Bostic's communications with the division of corrections constitutes conduct within the scope of her protected judicial role. The court has previously discussed the scope of the quasi-judicial immunity of a probation officer in *Gant v. United States Probation Office*, 994 F.Supp. 729 (S.D.W.Va.1998) (Faber, J.). In *Gant*, the court considered whether a federal probation officer's conduct came within the

scope of judicial immunity under circumstances where the probation officer attempted to collect a special assessment imposed by the court during sentencing, the officer then petitioned the court for a revocation proceeding when the plaintiff did not pay the assessment, a summons (rather than an arrest warrant) was then issued to secure the plaintiff's appearance, and the revocation proceeding never occurred because the plaintiff voluntarily complied. *id.* at 734.

The court stated that to determine whether particular conduct falls within the scope of quasi-judicial immunity, the court must consider the nature of the conduct being challenged and whether the threat of exposure of the probation officer to civil liability would adversely impact upon the officer's exercise of that function. *Id.* at 733. The court considered the following six factors, as enumerated by the United States Supreme Court in *Cleavinger v. Saxner*, 474 U.S. 193, 202, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), and *Butz v. Economou*, 438 U.S. 478, 512–13, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978):

1) the need to assure that the individual can perform his functions without harassment or intimidation;

2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct;

3) insulation from political influence;

4) the importance of precedent;

5) the adversary nature of the process; and

6) the correctability of error on appeal.

*Id.* (citing *Cleavinger v. Saxner*, 474 U.S. 193, 202, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985); *Butz v. Economou*, 438 U.S. 478, 512–13, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)).

■ The *Gant* court noted that probation officers uniformly have been granted absolute immunity for the preparation and submission of presentence reports for the reason that they "act 'as an arm of the court' when amassing and providing the court enough information to meaningfully perform its sentencing obligations." *Id.* at 733 (citing *Dorman v. Higgins*, 821 F.2d 133, 136 (2d Cir.1987); *Demoran v. Witt*, 781 F.2d 155 (9th Cir.1985); *Tripati v. INS*, 784 F.2d 345 (10th Cir.1986); *Hughes v. Chesser*, 731 F.2d 1489 (11th Cir.1984); *Spaulding v. Nielsen*, 599 F.2d 728 (5th Cir.1979); *Burkes v. Callion*, 433 F.2d 318 (9th Cir.1970)). In contrast, absolute immunity generally does not protect probation officers in initiating probation or supervised release revocation proceedings and seeking arrest warrants, where their role is more akin to that of a police officer. *Id.* The court concluded that the probation officer was entitled to quasi-judicial immunity inasmuch as he was simply enforcing a court order when he attempted to collect the special assessment. *Id.* at 734.

Chapter 62, Article 12 of the West Virginia Code outlines the powers and duties of probation officers, among other matters relating to probation and parole. West Virginia Code § 62–12–7 requires probation officers to present a presentence investigation report to the sentencing judge and to file a copy with the Board of Probation and Parole. West Virginia Code § 62–12–7a provides for the submission of the presentence report to the commissioner of corrections for use by the diagnosis and classification unit of the division of corrections. At first blush it appears that inasmuch as Bostic was responding to an inquiry made by the division of corrections regarding the presentence investigation report, which was submitted to the commissioner of corrections as required by statute, Bostic was performing a function more closely related to her judicial function of report preparation and submission, and less related to potentially non-protect-

ed duties such as initiation of probation or supervised release revocation proceedings and seeking arrest warrants.

Upon closer examination and consideration of the six factors identified by the United States Supreme Court, the proper resolution becomes less clear. When a probation officer submits a copy of the presentence investigation report to the commissioner of corrections, she is submitting a document that has been subjected to a number of procedural safeguards designed to protect the defendant's constitutional right not to be sentenced on the basis of information that is materially false. *See Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). Before the report is submitted to the court, the defendant and his counsel have an opportunity to review the report and notify the probation officer of objections and requests for corrections pursuant to Rule 43.01 of the West Virginia Trial Court Rules. The document is subsequently reviewed by the sentencing judge who may make determinations as to what may or may not be considered in sentencing pursuant to Rule 32(c)(1) of the West Virginia Rules of Criminal Procedure. The court then prepares a written record of its findings and determinations, which is appended to any copy of the presentence investigation report made available to the Board of Parole. Any determination made by the sentencing court is then subject to review on appeal. Thus the presentence report is subject to adversary scrutiny and two layers of judicial review. In contrast, if a probation officer were to send information to the division of corrections that was not addressed or contained in the presentence investigation report, such information would not be subject to adversary scrutiny and judicial review. It is difficult to see how a submission of information

under such circumstances could be considered within the scope of the officer's judicial function.

Regarding the July 12, 2005 letter, the court concludes that Bostic was not acting outside the scope of her judicial role when she did not provide this letter to the division of corrections upon their request for information. In reviewing the contents of the letter and comparing those contents with the contents of the presentence report, the court observes that the report adequately indicates the dispute over the age of the plaintiff's ex-wife when the two of them began their sexual relationship. The letter adds little to the contents of the report as to this issue.

■ With respect to the materials that Bostic did furnish, the court cannot conclude on the information provided by the parties whether she was acting within her judicial role inasmuch as the court does not know exactly what materials Bostic sent to the director of classification. Those materials have been summarized simply as police reports, photographs, family court papers, letters written by the plaintiff to his ex-wife, "and various other miscellaneous documents, which reinforce the program recommendations made by Gilmore's Unit Team." To the extent that it may later be determined that the communications related to matters that were covered by the presentence investigation report, the communications may be protected, but that determination cannot be made at this juncture.

Inasmuch as the court does not know the nature of the communications between Bostic and the division of corrections, the court is unable to determine whether her conduct outside the presentence report is protected by absolute quasi-judicial immunity.[5] Accordingly, her motion to dismiss beyond the presentence report is denied.

5. Bostic makes the further arguments that she

is protected by qualified immunity and Elev-

## II. The West Virginia Parole Board

■ The magistrate judge recommends that the West Virginia Parole Board be dismissed from the action with prejudice on the ground that it is a quasi-judicial entity entitled to absolute judicial immunity from liability. The plaintiff contends that the magistrate judge recommends the Board's dismissal as to money damages but not prospective relief, but it appears that her recommendation is that the Board be dismissed completely.

Case law in the Fourth Circuit and the State of West Virginia clearly provides that quasi-judicial immunity protects parole board members from section 1983 actions for damages. *See, e.g., Pope v. Chew*, 521 F.2d 400, 405 (4th Cir.1975) ("Parole Board members have been held to perform a quasi-judicial function in considering applications for parole and thus to be immune from damages in § 1983 actions."); *Parkulo v. West Virginia Board of Probation and Parole*, 199 W.Va. 161, 483 S.E.2d 507, 525 (1996). The law is not so clear with respect to immunity in actions for injunctive relief. In *Pulliam v. Allen*, 466 U.S. 522, 537, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984), the United States Supreme Court held that judicial immunity did not extend to claims for injunctive relief. Twelve years later, Congress passed the Federal Courts Improvement Act, amending section 1983 to bar injunctive relief "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity … unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Neither the Supreme Court nor the Fourth Circuit has addressed whether section 1983 protects quasi-judicial actors, such as the West Virginia Parole Board

members, from actions for injunctive relief, but the decided weight of authority has found that quasi-judicial actors are immune from such actions. *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir.1999); *Roth v. King*, 449 F.3d 1272, 1286–87 (D.C.Cir.2006); *Gilbert v. Ferry*, 401 F.3d 411, 414 n. 1 (6th Cir.2005) (dicta); *Pelletier v. Rhode Island*, No. 07–186S, 2008 WL 5062162, at *5–6 (D.R.I. Nov. 26, 2008); *Cannon v. South Carolina Dept. of Corrections*, 2008 WL 269519, at *4 (D.S.C. Jan. 29, 2008); *Von Staich v. Schwarzenegger*, No. 04–2167, 2006 WL 2715276 (E.D.Cal. Sept. 22, 2006); *contra Simmons v. Fabian*, 743 N.W.2d 281 (Minn.Ct.App.2007).

Inasmuch as the plaintiff has not alleged that a declaratory decree was violated or declaratory relief is unavailable, the court finds that the West Virginia Parole Board is a quasi-judicial entity that is entitled to absolute judicial immunity from the plaintiff's suit for both damages and prospective, non-monetary relief. Accordingly, the Board is dismissed from this action in its entirety.

## III. The Prison Defendants

### A. Eleventh Amendment and Qualified Immunity

■ The magistrate judge recommends that the claims for compensatory relief against the prison defendants in their official capacities be dismissed on the ground that the prison defendants are not "persons" under section 1983 in their official capacities with respect to compensatory relief. The prison defendants agree with this finding but object to the magistrate judge's corresponding observation that "[a] state official sued in his individual capacity is not protected by the Eleventh Amendment and is a 'person' under § 1983." The court agrees with the mag-

---

enth Amendment immunity. Inasmuch as neither argument was made in her motion to

dismiss, these questions are not properly before the court at this time.

istrate judge's conclusion in this respect as well as her further conclusion that the defendants not otherwise dismissed herein may be the subject of injunctive relief in their official capacities.

The magistrate judge makes no express recommendation as to the plaintiff's claims against the defendants in their individual capacities, presumably because the prison defendants did not move for dismissal of the plaintiff's claims against them in their individual capacities. The prison defendants contend that they did not move for dismissal of the plaintiff's individual capacity claims because at the time they filed their amended motion to dismiss on August 25, 2008, the complaint did not include individual capacity claims. The individual capacity claims were added to the complaint after the magistrate judge granted the plaintiff's motion for leave to file an amended complaint, which motion was granted by order entered October 29, 2008. The defendants were unable to amend their motion to dismiss to address the individual capacity claims because on October 28, 2008, the magistrate judge ordered all parties to immediately cease filing motions until the court ruled on those which were already pending. Inasmuch as the prison defendants did not enjoy the opportunity to move to dismiss the plaintiff's individual capacity claims following the filing of the amended complaint, they will be afforded the time in which to do so to the extent of raising the defense of qualified immunity.

B. Authority to Expunge or Correct Presentence Information and Prison File Information

The magistrate judge recommends that the court find that the plaintiff has failed to state a claim upon which relief can be granted to the extent that the plaintiff's claim is that the prison defendants have a duty to correct the allegedly false information in the presentence investigation re-

port. The plaintiff makes no objection to this recommendation, and it is adopted.

Rather, the plaintiff responds that he seeks to have the prison defendants correct or expunge only the errors that they have created in his prison file. He claims that he has tried to complete the forms for discrepancies but has been unable to do so because prison officials have prevented him from obtaining the necessary forms. Inasmuch as the prison defendants do have authority to correct errors in documents that they generated and placed in the plaintiff's file, the court finds that the plaintiff has stated a claim upon which relief can be granted.

The magistrate judge further recommends that the court find that the plaintiff has stated a claim of constitutional magnitude because the plaintiff alleges that false information is in his prison file and it is relied on to a constitutionally significant degree inasmuch as he is being denied parole because of the false information. In making this recommendation, she relies on the Fourth Circuit's opinion in *Paine v. Baker*, 595 F.2d 197 (4th Cir.1979). The prison defendants object to the magistrate judge's reliance on *Paine*, asserting that *Paine* is no longer good law inasmuch as there is no federal liberty interest in parole.

In *Paine*, the Fourth Circuit held that "in certain limited circumstances a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his file, (2) that the information is false, and (3) that it is relied on to a constitutionally significant degree." *Paine*, 595 F.2d at 201. The court stated that the third prong of the test—whether the information is relied on to a constitutionally significant degree—would be satisfied where it is relied on to deny parole inasmuch as a conditional liberty interest would be at stake. *Id.* at 202. Two months after the

court decided *Paine*, the United States Supreme Court handed down its decision in *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). In *Greenholtz*, the majority held that under the United States Constitution "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz*, 442 U.S. at 7, 99 S.Ct. 2100.

Nonetheless, as recognized by the Supreme Court in *Board of Pardons v. Allen*, 482 U.S. 369, 373, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987), and considered by the Fourth Circuit in *Hill*, a state statute can create a liberty interest in parole release that is protected by the Due Process Clause of the Fourteenth Amendment of the United States Constitution where the statute gives rise to a legitimate "expectation of parole." In order to create a liberty interest, the state statute must mandate "not procedures alone, or even procedures plus substantive predicates (objective criteria) alone, but substantive *results* once prescribed procedures have revealed that substantive predicates have been established." *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir.1994) (emphasis in original). "Whether any state statute provides a protectible entitlement must be decided on a case-by-case basis." *Greenholtz*, 442 U.S. at 12, 99 S.Ct. 2100 (finding that the Nebraska parole statute did not create a liberty interest because it was in part subjective and predictive and vested broad discretion in the Parole Board).

To determine whether the West Virginia parole statute creates a liberty interest in parole under the United States Constitution, the court must consider whether it gives rise to a legitimate expectation of parole. West Virginia Code § 62–12–13 provides that a prisoner will be eligible for parole, with some exceptions, when he (1) has served the minimum term of his indeterminate sentence or one-fourth of his definite term sentence, (2) is not in punitive segregation or administrative segregation as a result of disciplinary action, (3) has maintained a record of good conduct for at least three months prior to his parole release, (4) has submitted a written parole release plan approved by the Commissioner of Corrections, and (5) has satisfied the board that if released he will not constitute a danger to the community. Comparing the Nebraska statute discussed by the court in *Greenholtz* to the West Virginia statute, the court finds that West Virginia law does not create a federal liberty interest in parole release inasmuch as the fifth requirement, like the requirements of the Nebraska statute, is subjective and predictive and vests broad discretion in the Parole Board. The plaintiff, accordingly, does not state a claim of constitutional significance under the United States Constitution.

█ As noted by the magistrate judge, however, the West Virginia Supreme Court held in *Tasker v. Mohn*, 165 W.Va. 55, 267 S.E.2d 183 (1980), that the West Virginia parole statute does create a liberty interest in parole release under the Due Process Clause of the West Virginia Constitution. *Tasker*, 267 S.E.2d at 185 n. 1, 188. In *Tasker*, the West Virginia court considered the United States Supreme Court's ruling in *Greenholtz* and stated that while it agreed with the Supreme Court majority that an inmate must demonstrate a statutory entitlement to parole to implicate due process requirements, it believed that the majority "falter[ed] in its emphasis on the statutory language." *Id.* at 187. Instead, the West Virginia Court agreed with the *Greenholtz* dissenters who stated that:

the presence of a parole system is sufficient to create a liberty interest, protect-

ed by the Constitution, in the parole release decision.... From the day that he is sentenced in a State with a parole system, a prisoner justifiably expects release on parole when he meets the standards of eligibility applicable within that system.

*Id.* (quoting *Greenholtz,* 442 U.S. at 20, 99 S.Ct. 2100 (Powell, J., concurring and dissenting)). The West Virginia court then considered the West Virginia parole statute and held that under the West Virginia Constitution, the parole statute creates a legitimate reasonable expectation that parole will be granted. *Id.* Based upon the West Virginia Supreme Court's ruling in *Tasker,* the plaintiff has stated a claim of constitutional magnitude under the West Virginia Constitution.

## C. Constitutionally Protected Liberty Interest in Refusing to Participate in Sex Offender Treatment

■ The magistrate judge recommends that the court find that the plaintiff has stated a claim upon which relief can be granted based on a constitutionally protected liberty interest in not being classified as a "sex offender" and in not being required to undergo sex offender treatment, without due process of law, because he was not convicted of a sex offense. She further recommends that the court find that the plaintiff has stated a claim upon which relief can be granted with respect to his contention that his right to due process of law was violated when he was not given those procedural rights set forth in *Tasker v. Mohn,* 165 W.Va. 55, 267 S.E.2d 183 (1980), and *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), in connection with his purported sex offender status.

In making these recommendations, the magistrate judge observes that the question of whether there exists a constitutionally protected liberty interest in being free from participation in a prison's sexual of-

fender treatment program is a matter of first impression in the Fourth Circuit Court of Appeals and the federal courts in the states comprising the Fourth Circuit. She identifies cases from the Fifth, Ninth, Tenth, and Eleventh circuit courts of appeal in which those courts conclude that such a liberty interest does exist. Based upon the decisions of these four circuit courts and the West Virginia Supreme Court's holding in *Tasker* that West Virginia law gives prisoners a liberty interest in parole, she concludes that West Virginia cannot deprive a prisoner of parole by labeling him a sex offender when he was not convicted of a sex offense, without providing him the process which is due.

The magistrate judge aptly summarized the decisions of the four circuit courts that she considered in her PF & R, and the court need not repeat those summaries herein. Suffice it to say that those courts relied on the Supreme Court's holding in *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that when a change in the prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court, a prisoner is entitled to some procedural protections. Those courts hold that "the stigmatizing consequences of the attachment of the 'sex offender' label coupled with the subjection of the targeted inmate to a mandatory treatment program whose successful completion is a precondition for parole eligibility create the kind of deprivations of liberty that require procedural protections." *Neal v. Shimoda,* 131 F.3d 818, 830 (9th Cir.1997); *see Coleman v. Dretke,* 395 F.3d 216 (5th Cir.2004); *Chambers v. Colorado Dep't of Corrections,* 205 F.3d 1237 (10th Cir.2000); *Kirby v. Siegelman,* 195 F.3d 1285 (11th Cir. 1999).

The prison defendants object to the magistrate judge's recommendation on

four bases. First, they contend that each of the four circuit court cases referenced by the magistrate judge is distinguishable because in each case the treatment program required the inmate to admit his sexual misconduct, whereas West Virginia's program "contains various levels of treatment, with the first level consisting of education only." In two of the cases, *Neal* in the Ninth and *Kirby* in the Eleventh, the admission requirement was relevant only to a separate claim asserted by the plaintiffs (a claim based upon their right to be free from self incrimination). The court finds nothing in any of the four circuit courts' decisions that indicates that any of the courts considered the admission requirement essential to its recognition of a liberty interest. Nor do the prison defendants explain in their briefing why such a distinction would make a difference.

The prison defendants also object to the magistrate judge's reliance on the Ninth and Eleventh Circuits' opinions on the ground that, according to the defendants, the Ninth and Eleventh Circuits have issued rulings inconsistent with those relied on by the magistrate judge. Specifically, the defendants contend that the Ninth Circuit's opinion in *Russell v. Gregoire,* 124 F.3d 1079 (9th Cir.1997), conflicts with its earlier decision in *Neal.* The court does not agree. *Russell* concerned the right to privacy of two convicted sex offenders who were subjected to community notification under a statute commonly referred to as "Megan's law." *Russell,* 124 F.3d at 1081–82, 1094. The court held that they had no privacy interest in the information contained in the community notification inasmuch as that information was already available to the public and was not constitutionally protected. *Id.* at 1094. The court did not consider the liberty interests of inmates required to undergo a course of treatment for a crime of which they were never convicted.

The prison defendants also contend that the Eleventh Circuit's unpublished opinion in *Kramer v. Donald,* 286 Fed.Appx. 674 (11th Cir.2008), conflicts with its earlier decision in *Kirby.* The defendants fail to note, however, that in *Kramer* the court expressly distinguished *Kirby* on the ground that Kirby was classified as a sex offender, whereas Kramer was not, and so Kramer was not subjected to the stigmatizing effect of being so classified. Rather, Kramer was required to undergo treatment because the non-sexual offense for which he was imprisoned had a sexual component that warranted counseling.

The prison defendants further contend that the magistrate judge failed to consider opinions from courts that have come to conclusions contrary to *Neal, Kirby, Coleman,* and *Chambers.* The defendants cite four cases in which courts, according to the defendants, hold that there is no liberty interest in not being labeled as a sex offender for inmates who have not been convicted of a sex offense.

The first of the four cases relied upon by the prison defendants is *Gunderson v. Hvass,* 339 F.3d 639 (8th Cir.2003). In *Gunderson,* the court held that damage to one's reputation caused by a requirement to register as a sex offender is not sufficient by itself to invoke the procedural protections of the due process clause. *Id.* at 644. Inasmuch as the Minnesota statute did not provide for public dissemination of the registration and further inasmuch as the burdens of complying with the registration requirements were minimal, the court found that the plaintiff had not identified a protected liberty or property interest. *Id.* at 645. In contrast, here as well as in the four cases relied upon by the magistrate judge, the plaintiffs suffered more than just injury to their reputations. They were subjected to the additional burden of being required to participate in a

sex offender treatment program and risked losing parole eligibility if they failed to do so.

The second case is that of *Grennier v. Frank*, 453 F.3d 442 (7th Cir.2006). In *Grennier*, an inmate serving a life sentence on convictions of arson, burglary, and murder arising from circumstances involving necrophilia was denied parole, in part, because he failed to complete a sex offender treatment program. The Seventh Circuit held that, as a lifer, the inmate lacked a liberty or property interest in parole [6] and, accordingly, had no entitlement to a hearing under the due process clause. The court expressly distinguished the circumstances of the inmate's case from those in *Coleman, Chambers, Kirby*, and *Neal*, rejecting the inmate's contention that those four cases stood for the proposition that the stigma of being called a "sex offender" is enough by itself to deprive a person of liberty or property. The court stated:

> Doubtless these four decisions contain some language to that effect. But they do not so hold, because in each the sex offender designation was pertinent to a decision that the court believed to entail a protected interest (such as an opportunity for parole under a non-discretionary system—say, one providing that "every well-behaved prisoner except a sex offender is entitled to parole after serving 20 years"). It was the liberty or property interest stemming from statutes and regulations, and not the "sex offender" label alone, that required the hearing. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), holds that

the shame and humiliation of being called a criminal is not enough by itself to require a hearing under the due process clause.... [O]nly when the state goes further and makes a concrete decision that affects liberty or property ... is a hearing essential.

*Grennier*, 453 F.3d at 445.[7]

The court agrees with the Seventh Circuit's conclusion that *Coleman, Chambers, Kirby*, and *Neal* do not stand for the proposition that the stigma of being labeled a "sex offender," alone, is enough to implicate due process protections. A plaintiff must also show that he experienced some governmentally imposed burden that "significantly altered [his] status as a matter of state law." *Paul*, 424 U.S. at 710–11, 96 S.Ct. 1155. This is sometimes described as the "stigma plus" standard. But the Seventh Circuit limited its consideration to whether or not there was a liberty interest in parole and did not discuss whether the treatment program significantly altered the inmate's status.

Like the Fifth, Ninth, Tenth, and Eleventh Circuits, the court concludes that a sex offender treatment program could constitute a change in the conditions of confinement so severe as to essentially exceed the sentence imposed by the court. Here, although the plaintiff has no liberty interest in parole under the United States Constitution, he has been required to undergo treatment for behaviors in which it has not been proven he has engaged. Whether or not the treatment program is so severe as to essentially exceed the plaintiff's sentence remains a question of fact. More-

---

**6.** Under Wisconsin's parole system a prisoner with a fixed term presumptively is entitled to parole after serving two-thirds of his sentence, so a liberty interest arises at that point. Prisoners sentenced to life, however, never acquire a presumptive entitlement to parole under this system because there is no such thing as two-thirds of a life sentence.

**7.** The other two cases, both unpublished, relied on by the defendants are *Renchenski v. Williams*, No. 3:06–cv–278, 2007 WL 2155542 (M.D.Pa. July 26, 2007), and *Talouzi v. O'Brien*, No. 05–cv–235–HRW, 2006 WL 625292 (E.D.Ky. Mar. 10, 2006). These cases cite to and rely on the rationale of *Grennier*, which the court has already discussed.

over, the plaintiff has a liberty interest in parole under the West Virginia Constitution, so, at the very least, he has stated a claim under the West Virginia Constitution that is not inconsistent with the Seventh Circuit's holding in *Grennier*.

In summary, the court finds each of the defendants' objections to the magistrate judge's PF & R with regard to plaintiff's liberty interest in refusing to participate in sex offender treatment to be lacking in merit. The magistrate judge thoroughly considered the cases from other jurisdictions that were most on point with the circumstances presently before the court and reached a well reasoned resolution.

### D. Correct Classification

The prison defendants argued in their motion to dismiss that the plaintiff's section 1983 claims "should be dismissed with prejudice because he has been classified correctly as a Level III Inmate." Their briefing centered on why he was classified as a level III inmate and why that classification was the correct one. Their briefing was accompanied by supporting evidence. Specifically, they contend that he was properly classified as a level III because he used a 200,000 volt stun gun in the commission of the burglary for which he is currently serving a sentence. In the PF & R, the magistrate judge recommends that the court find that the prison defendants have not made an argument concerning the plaintiff's classification that can be addressed on a motion to dismiss. The court concludes that the magistrate judge's assessment is correct.

In their objections, the prison defendants make a new argument that was not presented to the magistrate judge. They contend that the plaintiff should not be permitted to maintain a section 1983 action against them for incorrectly classifying him because prisoners have no liberty interest in retaining or receiving a particular security or custody status. In *Slezak v. Evatt*, 21 F.3d 590 (4th Cir.1994), the Fourth Circuit Court of Appeals observed that the "federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement . . . is within the sentence imposed . . . and is not otherwise violative of the Constitution.'" *Slezak*, 21 F.3d at 594. "Within these limits, so far as the federal constitution is concerned, the security and custody classification of state prison inmates is a matter for state prison official discretion whose exercise is not subject to federal procedural due process constraints." *Id.*

██ A liberty interest in retaining or attaining a particular security classification may be created by state law. *Id.* In order to do so, the state law must in effect "plac[e] substantive limitations on official discretion, . . . thereby giving rise, at the limits imposed upon discretion, to 'legitimate claim[s] of entitlement' . . . to the classification sought and administratively denied." *Id.* (internal citations omitted). In other words, "constitutionally protected liberty interests are only created by state law regimes which in the end effectively say to inmates; 'If facts A, B, and C are established in an appropriate fact-finding process, you are thereupon legally entitled to a more favorable security or custody classification than you presently have' or, 'Unless facts A, B, and C are so established, you are legally entitled not to be placed in a less favorable classification than you now have.'" *Id.* at 595.

██ Neither West Virginia Code § 62–13–4, the statute that creates and defines the powers of the West Virginia Division of Corrections, nor the West Virginia Division of Corrections classification guidelines creates a legitimate expectation of receiving or maintaining a particular classifica-

tion. The statute simply provides that the commissioner or director of corrections management shall "[e]stablish a system of classification of inmates, through a reception and examination procedure, and in each institution a classification committee and procedure for assignment of inmates within the programs of the institution." The guidelines merely set out procedures to be followed in assigning a classification and they provide for discretionary review by higher-level prison officials. The parties have identified no other source of a liberty interest in a particular classification under West Virginia law. The court, accordingly, finds that West Virginia law does not create a constitutionally protected liberty interest in retaining or attaining a particular security or custody classification. The plaintiff thus cannot state a claim upon which relief can be granted with respect to the correctness of his security classification.

This conclusion, however, does not provide a basis for dismissal of his claim. As the plaintiff indicates in his amended complaint, he is not challenging his classification as a level III. He challenges the correctness of his classification only to the extent that it relates to his being classified as a sex offender. He states:

> The DOC defense counsel want to talk about the level III being provided only by attachment of a weapon. This is simply not what was being indicated to this Plaintiff. It was to have increased and would remain increased because of the fact that [sic] of being deemed a sex offender. This Plaintiff's greatest concerns were about being labeled a sex offender by the DOC defendants, and surly [sic] not being bumped to a level III.

(Am.Compl.20). As earlier noted, the plaintiff has adequately stated a claim regarding the additional burdens placed upon him as a result of his classification as a sex offender.

E. Failure to Exhaust Administrative Remedies

With respect to administrative exhaustion, the magistrate judge recommends that the court find that the prison defendants have not supplied sufficient evidence to support their argument of failure to exhaust. The defendants object to this recommendation and attach the affidavits of Charlene Sotak, Grievance Coordinator for the Division of Corrections, and Regina Stephenson, Classification Director for Mount Olive Correctional Complex, which the defendants contend show that the plaintiff did not appeal any classification or program recommendations except on April 20, 2006, at the Huttonsville Correctional Center and on August 2, 2006, at St. Mary's Correctional Center. The defendants assert that the plaintiff failed to appeal following his reclassifications at St. Mary's on October 17, 2006, and January 1, 2007, and at Mount Olive on April 11, 2007, and March 20, 2008. The plaintiff responded to the defendants' objections, asserting that he was told he was not allowed to file any further grievances on the matter of classification and contending further that the matter of exhaustion should be subjected to discovery and resolved on a motion for summary judgment rather than a motion to dismiss.

Where matters outside of the pleadings, such as the affidavits supplied by the defendants, are presented with a motion to dismiss under Rule 12(b)(6), "federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings ... and to rely on it, thereby converting the motion [to a motion for summary judgment], or to reject it or simply not consider it." 5C Charles A. Wright & Arthur R. Miller, *Federal Prac-*

*tice and Procedure* § 1366. In resolving the present motion to dismiss, the court declines to consider the two affidavits presented by the prison defendants. Neither affidavit was presented to the magistrate judge for consideration. Nor has discovery commenced in this action.

As the magistrate judge aptly noted, the Supreme Court held in *Jones v. Bock,* 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007), that an inmate's failure to exhaust remedies under the PLRA is an affirmative defense, and the inmate need not demonstrate in his complaint that he has exhausted applicable remedies. Affirmative defenses are generally not appropriate for disposition under Rule 12(b)(6). *See Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir.2007) (noting a Rule 12(b)(6) challenge, "which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred."). An exception exists for the "relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint. . . ." *Id.* The exception is strictly construed, requiring that all "facts necessary to the affirmative defense 'clearly appear[ ] on the face of the complaint.'" *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst,* 4 F.3d 244, 250 (4th Cir.1993)). Nothing apparent from the face of the plaintiff's complaint clearly establishes that the plaintiff has failed to exhaust any administrative remedies. Accordingly, the court agrees with the magistrate judge that none of the plaintiff's claims should be dismissed at this stage of the litigation on the basis of this affirmative defense.[8]

## F. Lack of a Physical Injury

 The magistrate judge recommends that the court find that the plaintiff's allegations that he has suffered stomach and lower intestinal problems, headaches, cold sweats, rashes, nightmares, vomiting, and teeth grinding are sufficient to state a claim which meets the requirements of 42 U.S.C. § 1997e(e) that a prisoner make a showing of physical injury in order to recover for mental or emotional injury. The prison defendants object on the ground that the magistrate judge, according to the defendants, jumps straight to the issue of causation without first considering whether, even when the allegations are taken as true, the plaintiff's claimed physical ailments actually rise to the level of a constitutional claim. The defendants contend that the plaintiff's alleged injuries are *de minimus* and, accordingly, not actionable.

The defendants cite to five cases in support of their position that the plaintiff's alleged injuries are *de minimus.* Three of those cases, *Alexander v. Tippah County, Miss.,* 351 F.3d 626 (5th Cir.2003); *Henderson v. Sheahan,* 196 F.3d 839 (7th Cir.1999); and *Oliver v. Deen,* 77 F.3d 156 (7th Cir.1996), are circuit court opinions in which the courts find that injuries similar to those asserted by the plaintiff are *de minimus.* The cases are distinguishable from the circumstances presently before the court inasmuch as in each of the three cases the court was resolving a motion for summary judgment, rather than a motion to dismiss. Discovery had been completed in each case and each court was aware of the extent of the plaintiff's injuries when it

---

**8.** Additionally, in making her recommendation, the magistrate judge states in dicta that "there is a question as to whether an inmate must repeatedly appeal a decision that is the same as a prior decision which was appealed." The prison defendants challenge this observation, stating that the magistrate judge cites to no case law in support of this observation. Inasmuch as the court declines to consider the evidence proffered thus far and reserves the opportunity to consider the exhaustion issue at a later time, the court need not address this question now.

rejected the plaintiff's claims as failing to allege an injury that rises to the level of a constitutional violation. Here, the parties have not yet conducted discovery, the court does not know the extent of the plaintiff's injuries, and the court must draw all reasonable inferences from the plaintiff's factual allegations in the plaintiff's favor.

The other two cases cited by the defendants are unpublished district court cases from districts other than this one. *Hutchinson v. Civitella*, No. 02–cv–2407(CBM), 2003 WL 22056997 (S.D.N.Y. Sept. 4, 2003), offers no support for the defendants' contention that the plaintiff's injuries are *de minimus*. In *Hutchinson*, the court held that plaintiff's alleged injuries—which included chest pain, nausea, vomiting, rapid weight loss, and dizziness—were not individually serious enough for purposes of the Eighth Amendment, but expressly declined to consider whether the injuries viewed together were more than *de minimus*.

Likewise, *Martin v. Arpaio*, No. CV 06–2218–PHX–DGC (DKD), 2006 WL 3717383 (D.Ariz.2006), offers little support to the prison defendants' position. In *Martin*, the plaintiff alleged that the jail's food handlers did not hold food handler permits and, further, that he had seen individuals serving meals while they had staph infections or strep throat. *Martin*, 2006 WL 3717383, at *3. The plaintiff claimed that as a result of these conditions he has been sick on many occasions with stomach cramps, diarrhea, and minor vomiting. *Id.* The court held that the plaintiff's allegation of cramps and diarrhea resulting from food handling appeared both conclusory and *de minimus*. *Id.* As earlier noted, a court must " 'accept as true all of the factual allegations contained in the complaint,' " *Erickson*, 127 S.Ct. at 2200 (quoting *Twombly*, 127 S.Ct. at 1965), and "draw[ ] all reasonable ... inferences from

those facts in the plaintiff's favor," *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999). Allegations, however inartfully pled by a *pro se* plaintiff, are sufficient to afford a plaintiff an opportunity to offer supporting evidence unless it is beyond doubt that the plaintiff can prove no set of facts entitling him to relief. *See Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). While a court should not develop tangential claims from scant allegations, if a *pro se* plaintiff's complaint contains potentially cognizable claims, the plaintiff should be allowed to particularize these claims. *See Beaudett v. City of Hampton*, 775 F.2d 1274 (4th Cir. 1985); *Coleman v. Peyton*, 340 F.2d 603, 604 (4th Cir.1965). Although the plaintiff has not alleged the severity or frequency of his stomach and lower intestinal problems, headaches, cold sweats, rashes, nightmares and vomiting, and his teeth grinding in the complaint, which was *pro se* when filed, the court should presume for the purposes of this motion that they are severe and continuous. In contrast, the plaintiff in *Martin* alleged only occasional sickness with minor vomiting. The court, accordingly, finds *Martin* unhelpful at this stage in the litigation.

The court finds that the magistrate judge's recommendation on the physical injury issue is appropriate.

### IV. Conclusion

The court concludes that the magistrate judge's recommended disposition is correct with respect to the motions filed by Correctional Medical Services, the West Virginia Parole Board, and the prison defendants. It is, accordingly, ORDERED that:

1. The motion to dismiss and second motion to dismiss filed by Correctional Medical Services on August 12, 2008, and August 15, 2008, re-

**516**

spectively, be denied without prejudice;

2. The motion to dismiss the West Virginia Parole Board filed on August 25, 2008, be granted on the basis of quasi-judicial immunity, and all claims against the West Virginia Parole Board be dismissed;

3. The motion to dismiss filed by the prison defendants on August 19, 2008, be denied as moot;

4. The amended motion to dismiss filed by the prison defendants on August 25, 2008, be granted as to the prison defendants in their official capacity as to money damages only but not as to possible injunctive relief, be granted as to the prison defendants with respect to expunging or correcting the presentence investigation report, be denied without prejudice as to the issue of qualified immunity, and be otherwise denied.

It is further ORDERED that the motion to dismiss filed by Rebecca Bostic on September 18, 2008, be granted as to the presentence investigation report and otherwise denied.

The Clerk is directed to forward copies of this written opinion and order to all counsel of record and the United States Magistrate Judge.